1  BRIAN K. CUTTONE (SBN 201314)
   CUTTONE & ASSOCIATES
2  5380 N. Fresno Street, Suite 102
   Fresno, California 93710
3  Telephone: 559.228.8490
   Facsimile: 559.421.1991
4

5

6  Attorneys for BRADLEY S. KESSLER;
   BK-INDUSTRIES, INC. and AG-K PROPERTIES, LLC
7

8                    UNITED STATE DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  BRADLEY   S.   KESSLER,   an          Case No.: **1:25-CV-00288-JLT-SKO**
    individual; BK-INDUSTRIES, Inc, a
12  California   Corporation;   AG-K
    PROPERTIES, LLC
13                                         **PLAINTIFFS OPPOSITION TO**
              Plaintiff,                   **MOTION TO DISMISS BY**
14                                         **DEFENDANTS MICHAEL HAYES**
         v.                                **AND VH DESIGN GROUP, INC.**
15
    CITY OF ATWATER, a Municipal
16  Corporation; CITY OF ATWATER
    BUILDING DEPARMENT; GREG           **Date:     June 3, 2025**
17  THOMPSON, an individual; MARK      **Time:     9:00 a.m.**
    PEREIDA,    an    individual;      **Dept.:    4**
18  STEPHANIE RUIZ, an individual;     **Judge:    Honorable Jennfer L. Thurston**
    MICHAEL NELSON, an individual;
19  JACQUYN "JACKI" LOPEZ, an
    individual; MICHAEL HAYES, an
20  individual; VH DESIGN GROUP,
    INC., doing business as VVH
21  CONSULTING      ENGINEERS;         **Complaint Filed: September 6, 2024**
    RHYOLITE DEVELOPMENT &
22  CONSTRUCTION, INC., a California
    Corporation and DOES 1-50.
23
              Defendants.
24

25  **I.     INTRODUCTION AND SUMMARY ARGUMENT:**

26      Defendants VH Design Group, Inc. and its principal Michael Hayes ("Defendants") have filed

27  a motion to dismiss, pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6) (the

28  "Motion"). The Motion is without merit and must be denied.

1

Opposition to Motion to Dismiss By Defendants' Michael Hayes and VH design Group Inc.

1

## TABLE OF CONTENTS

I.    Introduction and Summary Argument .................................................................. 1

II..   Statement of Facts ....................................................................................... 3

III.   Standard for Motion to Dismiss .......................................................................... 8

IV.   THE FAC ADEQUATELY STATES VIABLE CLAIMS FOR RELIEF .... 8

    A.    The FAC Sufficiently States A Cause of Action Against Defendants

         ....................................................................................................................... 8

        **1.** The Defamation Claims Are Properly Pled and Should Not Be

            Dismissed ......................................................................................... 9

        **2.** The Claims For Intentional Interference With Prospective Economic

            Advantage, Negligent Interference With Prospective Economic

            Advantage and Intentional Interference With a Contractual

            Relationship Are Properly Pled and Should Not Be Dismissed .......... 9

        **3.** The IIED Claim Is Properly Pled and Should Not Be Dismissed ....... 9

        **4.** The Negligence Claim is Properly Pled and Should Not Be

            Dismissed ......................................................................................... 9

        **5.** The Claim for Extortion is Properly Pled and Should Not Be

            Dismissed ......................................................................................... 9

        **6.** The Contract Claims are Properly Pled and Should Not Be Dismissed. 10

        **7.** The Constitutional and Civil Rights Claim Are Properly Pled And

            Should Not Be Dismissed ................................................................. 10

        **8.** The Cause of Action for Writ Relief Is Properly Pled and Should Not

            Be Dismissed ................................................................................... 10

        **9.** Fraud and Conspiracy Causes of Action Are Properly Pled and Should

            Not Be Dismissed ............................................................................ 10

        **10.** Intentional Interference with Prospective Economic Advantage ......... 10

        **11.** Breach of Contract and Implied Covenant ...................................... 10

        **12.** Defendants Purposely Misconstrue the Facts of the FAC ................... 11

i

**13.** Request for Leave to Amend. ........................................................ 11

B. Detailed Factual Allegations Support Each Cause of Action) ................ 12

C. Allegations Against City Employees Are Proper ................................ 12

V. PLAINTIFFS' CLAIMS ARE NOT BARRED BY PROCEDURAL

DEFENSES ......................................................................................... 12

A. Plaintiff's Claims Are Not Barred by the Statute of Limitations, Cal. Gov.

Code § 65009 Does Not Apply, Therefore The Motion Must Be Denied ..... 12

B. Plaintiffs Have Complied With the Government Code And The Motion

Should Be Denied ............................................................................. 15

C. Plaintiffs Have Exhausted Administrative Remedies Where Required,

Therefore, the Motion Must Be Denied. ............................................... 17

VI. IMMUNITY DEFENSES DO NOT APPLY AT THE PLEADING STAGE   18

A. Government Code Immunities Are Limited ................................... 18

B. Plaintiff's Claims Are Not Barred by Governmental Immunity And

The Motion Should Be Denied ............................................................ 18

C. Conspiracy Claims Involve Private Actor (VVH) and Mixed

Motives ........................................................................................... 19

VII. PLAINTIFFS' CLAIMS ARE NOT DERIVATIVE OF LAND USE

DISPUTE ......................................................................................... 20

A. Claims Arise From Misconduct, Not Permitting Decisions Alone ..... 20

B. Plaintiffs Had Reasonable Reliance Based on Representations .......... 20

VIII. Conclusion ...................................................................................... 20

ii

Opposition to Motion to Dismiss By Defendants' Michael Hayes and VH design Group Inc.

## TABLE OF AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197–98 ................... 14

*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570 ............................ 8

*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 989 ...................................... 18

*Cameron v. State of California* (1967) 66 Cal.2d 25, 29 ............................. 18

*Connelly v. Cnty. of Fresno,* 146 Cal. App. 4th 29, 38 (2006) ..................... 16

*Copp v. Paxton* (1996) 45 Cal.App.4th 829, 837 .......................................... 9

*Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766,

800–801. ............................................................................................... 18

*District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (1984). .................. 8

*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478 ................................. 11

*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 ................... 14

*Gonzalez v. County of Los Angeles* (2006) WL 589285 .............................. 17

*Hernandez v. City of Stockton* (2023) 90 Cal.App.5th 1222 ...................... 15

*Jones v. Czapkay*, 182 Cal.App.2d 192 (1960). ........................................ 12

*King v. Cnty. of Los Angeles*, No. 2:15-CV-07072-CAS-E, 2015 WL 6870010,

at *3 (C.D. Cal. Nov. 6, 2015) ............................................................... 11

*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153–

1154 ..................................................................................................... 10

*McGill v. City of Redding* (1996) 47 Cal.App.4th 235, 241 ....................... 17

*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 ................................... 14

*Perez v. Golden Empire Transit Dist.*, 209 Cal.App.4th 1228 (2012). ......... 16

*Ramos v. County of Madera* (2019) WL 2092748 ....................................... 15

*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 253 ............. 9

*Simons v. Yale University,* 712 F.Supp.3d 267, 286 (2024) ................... 14, 18

*Sofranek v. Merced County* (2007) 146 Cal.App.4th 1238, 1250–1251 ........ 14

*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158. ... 10

Opposition to Motion to Dismiss By Defendants' Michael Hayes and VH design Group Inc.

1   *Turner v. State of California* (1991) 232 Cal.App.3d 883, 888 ................... 17

2

3   *Westcon Construction Corp. v. County of Sacramento*, 152 Cal.App.4th 183

4   (2007) ................................................................................ 16

5   *Yaka v. City of San Jose* (2008) 160 Cal.App.4th 139, 145 ........................ 17

6

7   Code of Civil Procedure section 425.16 .......................... 1, 2, 8, 9, 23

8   Government Code section 65009 ...................................... 12, 13

9   Government Code section 65009(a)(2) ................................ 13

10  Government Code section 65009(b)(2)                        13

11  Government Code § 820.2 ............................................. 18

12  Government Code section 821.6 ...................................... 19

13  Federal Rules of Civil Procedure, Rule 12(b)(6) ................ 20

14  Federal Rules of Civil Procedure section 15(a)(2), ............ 11

15  Fed. R. Civ. P. 11 ....................................................... 13

16  West's Ann.Cal.Gov.Code § 910.8 ................................ 16

17  West's Ann.Cal.Gov.Code § 911 ................................... 16

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion to Dismiss By Defendants' Michael Hayes and VH design Group Inc.

1    Plaintiffs, through their First Amended Complaint (FAC), assert a wide range of claims
2    against Defendants, including but not limited to defamation, slander per se, intentional and
3    negligent interference with prospective economic advantage, fraud, breach of contract, civil rights
4    violations, constitutional violations, intentional infliction of emotional distress, and numerous
5    other intentional torts. These claims arise from Defendants' misconduct, including intentional acts
6    of coercion, procedural manipulation, and misrepresentations aimed at undermining Plaintiffs'
7    business interests and rights. The FAC provides detailed factual allegations that support each of
8    Plaintiffs' claims, demonstrating that Defendants' actions are not just a matter of dissatisfaction
9    but rather are grounded in unlawful, improper behavior, government corruption. Defendants'
10   Motion to Dismiss seeks to avoid discovery and accountability by mischaracterizing Plaintiffs'
11   claims as mere misunderstandings or attempts to bully the Defendants. However, dismissal at the
12   pleading stage is inappropriate when the claims are supported by sufficient factual detail and there
13   are factual disputes that need to be resolved at trial.

14   First, the Motion woefully mischaracterizes the nature of the First Amended Complaint
15   (the "FAC") as setting forth claims concerning only an isolated event regarding an "advertising
16   billboard" project ("Billboard Project"). The truth of the matter is the FAC concerns *ongoing*
17   illegal, tortious activity against numerous projects of the Plaintiffs, including, but not limited to
18   the Billboard Project and the Railroad Project. See FAC at paragraphs 44, 158, 162, 179, and
19   185.

20   Second, Plaintiffs' causes of action do not arise from any statements, writings, or conduct
21   in furtherance of the City's or Individual Defendants' rights to petition or speech or associated
22   with any legitimate City purpose. Instead, they arise from the Defendants' decisions, tortious
23   conduct, breach of contractual obligations and breach of the public trust.    In sum, the FAC
24   concerns corruption by City officials and employees.

25   Third, the claims are not time barred by the statute of limitations, failure to exhaust
26   administrative remedies, failure to comply with the Government Claims Act, or barred by
27   immunities under the Government Code.
28   ///

Fourth, the FAC satisfies the particularity requirement for pleading and if the court finds otherwise, Plaintiffs respectively request leave to amend.

## II.    STATEMENT OF MATERIAL FACTS:

The claims set forth in the FAC arise out of corruption by the City, City Officials, staff and outside parties conspiring and colluding with each other to harm Plaintiffs.  The FAC does not concern an isolated incident regarding the Billboard Project but an ongoing/continuing course of conduct regarding all of the projects of the Plaintiffs, including the Railroad Project and many others.

On February 9, 2024, Plaintiffs filed with the City of Atwater ("City") the City of Atwater Claims Form, claiming the City's conduct was ongoing from "July 1, 2021 through the Present" or February 9, 2024.  See **Exhibit A** to the Defendants Request for Judicial Notice. The City of Atwater rejected the claims on March 6, 2024 ("Rejection of Claims").  See a true and correct copy of the Rejection of Claims attached as **Exhibit 4** to the Plaintiffs' Request for Judicial Notice ("RJN").  On August 14, 2024, Plaintiffs timely filed the Complaint against the Defendants, in the Merced County Superior Court.  See a true and correct copy of the Complaint attached to the RJN, as **Exhibit 6.**  On August 27, 2024, Plaintiffs filed an Amended City of Atwater Claims Form adding additional claims and damages based upon the continuous/ongoing conduct of the Defendants and stated "This is an amended claim to the claim filed on February 9, 2024, and is in addition to the claim on February 9, 2024 . . . ."  See a true and correct copy of the Amended City of Atwater Claims Form attached to the Defendants Request for Judicial Notice, as **Exhibit B**.  On October 2, 2024, the City rejected the Amended City of Atwater Claims ("Rejection of Amended Claims).  See a true and correct copy of the Rejection of Amended Claims, attached to the Plaintiffs' RJN, as **Exhibit 5.**  On January 23, 2025, the FAC was timely filed.  On March 6, 2025, the Defendants removed the case to Federal Court.  On April 7, 2025, the Plaintiffs filed their Motion for Remand.

The FAC alleged the following material facts regarding the corruption, intentional tortious conduct directed at Plaintiffs and breach of obligations against the Defendants and the conspiracy to harm Plaintiffs:

[T]he Defendants named herein aided and abetted the others and was a co-conspirator of each of the other defendants, and in undertaking or failing to undertake the actions complained of herein, each such defendant was acting in the course and scope of such conspiracy and in furtherance of the conspiracy. As a result of the conspiracy that existed between the Defendants, each of the co- conspirators is liable in some manner or fashion for each of the acts and omissions of each of the other co-conspirators. (FAC, at ¶23)

[E]ach defendant is and at all times relevant was, the partner, agent, employee, servant or alter ego of each of the other defendants named herein and, in doing the things hereinafter alleged, was acting within the scope of such employment, agency, servitude, alter ego relationship, joint venture and partnership. Further, each of the defendants engaged in, authorized or ratified the acts or omissions to act, as the case may be, of the other defendants. (FAC, at ¶24)

On or about June 28, 2021, the City approved and on August 24, 2021, the PLAINTIFF BK entered into the Advertising Display Lease Agreement with the City ("Agreement") wherein PLAINTIFF BK would install, maintain and sell advertising to be projected on a digital billboard on land owned and maintained by the City commonly referred to as Five Corners. (FAC, at ¶28)

On June 30, 2022, the design and elevation plans were approved by Thompson, as the Community Development Director and Pereida, as the Chief Building Official for the City. Both hompson and Pereida told PLAINTIFFS to get started immediately as the project would be streamlined and expedited through the application and building process with the City, as the City Council and Building Department has approved the project, the design and elevation plans and the design and materials to be used in and for the project. (FAC, at ¶31)

In reliance on the City's assurances, encouragement, representations and approval and execution of the Agreement and approval of the design and elevation plans, PLAINTIFFS: (a) purchased the digital billboard screens, at the cost of $191,898.93; (b) employed an engineering firm for further necessary plans to construct the digital sign, at the costs of $61,250; (c) paid for blue prints, at the cost of $330; (d) paid a vendor for a domain name and to create a website to advertise available spots on the digital sign, at the cost of $690.37; (e) hired a marketing company to sell ad spots, at the cost of $25,200; (f) rented equipment (pounder), at the cost of $56.25; (g) incurred and paid further engineering fees, at the cost of $21,250; (h) purchased signage, at the cost of $6,840; (i) purchased the steel material necessary to construct the digital sign, at the cost of $88,910; (j), purchased a bond, as required, at the cost of $115.11; (k) hired a company to print advertising flyers for the spots, at the cost of $243.57; (l) employed a lawyer to prepare marketing contracts, disclaimers, etc, at the cost of $11,650; and other miscellaneous costs for the project, all of which, including the aforementioned, at a cost of $416,386.59, all of which was known to the Defendants contemporaneously with the expenditures. (FAC, at ¶32)

In reliance on the representations of the City, including, but not limited to Thompson and Pereida, PLAINTIFFS sold advertising spots, in the total amount of $113,200 and

took additional reservations for spots, which amounted to approximately $39,800. (FAC, at ¶33)

Thompson approached PLAINTIFFS and tried to convince PLAINTIFFS to abandon the project and sell it to another person and PLAINTIFFS refused to do so. **PLAINTIFFS are informed and believe that THOMPSON did so for his own pecuniary benefit.** Afterwards, Thompson informed PLAINTIFFS that the digital sign project would be stalled and multiple procedural hoops needed to be navigated. Afterwards, no further action would be taken by the City to facilitate the building permit and other approvals necessary to complete the project. In fact, Defendants informed PLAINTIFFS that they would now need to go before the Planning Commission to seek approval for the project, which was already approved by the City. Nelson, a member of the Planning Commission, recused himself, for reasons **PLAINTIFFS are informed and believe to further the plan by the defendants to hinder, delay and harm PLAINTIFFS. The recusal caused the vote at the** Planning Commission to be deadlocked and PLAINTIFFS did not have the necessary votes for approval of the digital sign project, even though the Planning Commission was aware of the aforementioned expenditures and prior City approvals. In other words, as a result of Nelson recusing himself from voting on the project, as a Planning Commissioner, the project was not approved. (FAC, at ¶35)

The aforementioned denial of the project by the Planning Commission resulted in the beginning of substantial delays in the commencement of the project, causing substantial economic harm to PLAINTIFFS and causing PLAINTIFFS to have to appeal the decision to the City Counsel. (FAC, at ¶36)

Prior to the appeal, which took place on or about December 12, 2022, Pereida informed PLAINTIFFS that if the appeal was successful, PLAINTIFFS could pick up the building permit to commence the project the next day. (FAC, at ¶37)

Prior to the appeal hearing in front the City Counsel, PLAINTIFFS were notified That CSG, an outside consulting firm working for the City had approved the PLAINTIFFS' plans for the digital sign/structure. (FAC, at ¶38)

However, before the appeal hearing, PLAINTIFFS were informed for the first time that Hayes and VVH, the outside engineering firm, serving as the City's engineer reversed the previous approvals by the City and imposed a multitude and excessive conditions effectively stopping and substantially delaying any progress on the project and preventing a building permit to issue, even after the City Council granted the appeal seemingly allowing the project to move forward. (FAC, at ¶39)

Defendants, and each of them, collectively and individually, have developed ill will towards PLAINTIFFS and their business activities and have taken actions with the intent to cause harm to PLAINTIFFS' business enterprises and reputations. PLAINTIFFS are informed and believe and thereon allege that Defendant City, through its agents and employees has deliberately developed and implemented a scheme to improperly and wrongfully make false and deliberately harmful statements about PLAINTIFFs and their business enterprises, including but not limited to PLAINTIFFS' interactions with the City regarding real estate development projects.

PLAINTIFFS are informed and believe and thereon allege that Defendants' scheme included not only false statements about PLAINTIFFS and PLAINTIFFS' business enterprises' activities with Defendant City but also included imposing the implementation and discriminatory procedures on PLAINTIFFS and their business enterprises in their real estate development and construction activities and that were intended to be costly, hindering and burdensome for PLAINTIFFS and their business enterprises in their real estate development and construction activities. The scheme was developed and implemented with the specific intent to cause PLAINTIFFS harm and to interfere and impair PLAINTIFFS from being on a level playing field with other similarly situated real estate developers and in some cases to obtain benefits for the Defendants, and each of them, individually and collectively. PLAINTIFFS are further informed and believe and thereon allege that Defendant City, through its agents and employees, devised and implemented this scheme to discriminate against PLAINTIFFS and their business enterprises in a manner that was unfair and gave other similarly situated real estate developers an unfair advantage over PLAINTIFFS in their real estate development activities. **PLAINTIFFS are informed and believe, and thereon alleged that the individual Defendants were incentivized by garnering personal benefits through their course of action, all harming PLAINTIFFS, while benefiting the Defendants' individually.** (FAC, at ¶40)

[T]he City, including the City of Atwater Building Department, has, through its actions and inactions, acting through its agents, employees and authorized representatives, engaged in a course of conduct designed to and has improperly interfered with PLAINTIFFS' business activities and otherwise caused PLAINTIFFS and PLAINTIFFS' businesses to suffer substantial injury, economic damages, and damages to their reputations. (FAC, at ¶41)

Defendants' activities include, but are not limited to, deliberately and with the intent to cause PLAINTFFS harm and damages to PLAINTIFF, the following: a. Publishing, or allowing to be published, false statements about PLAINTIFFS and their business failing to timely pay the fees that were in fact not due to the City; b. Publishing or allowing to be published, false statements about PLAINTIFFS and their businesses failing to submit, or timely submit, proper and/or compliant paperwork in connection with their development/construction activities; c. Altering or fabricating facts and/or documentation for the purpose of allowing the same to be used to falsely create the impression that PLAINTIFFS and their business enterprises had failed to timely pay the fees and/or submit proper plans and other documents; d. Altering or fabricating facts and/or documentation for the purpose of allowing the same to be used to falsely create the impression that PLAINTIFFS and their business/enterprises had failed to submit the proper paperwork in connection with their development/construction activities in a manner that impaired the City's or that justified the City's actions in delaying and imposing unreasonable and unfair conditions on PLAINTIFFS' projects and other matters submitted to the City for approval; e. Deliberately applying inconsistent and unfair standards and scrutiny to PLAINTIFFS' projects and building activities, and otherwise discriminating against PLAINTIFFS and their businesses, in a manner that has caused substantial economic damages and injury to their reputations; f. Forcing and/or requiring PLAINTIFFs and their businesses and business enterprises to outlay unnecessary expenses, perform additional work, and/or modifications to work and/or projects that were unnecessary and/or inconsistent with similar work

performed by other contractors and/or developers; g. Forcing and/or requiring PLAINTIFFS and their businesses and business enterprises to pay unnecessary expenses/costs, do additional work, and/or modifications to work and/or projects that were unnecessary and/or inconsistent with plans or prior agreements made by the City confirming that such additional work was not required; h. The delaying of PLAINTIFFS' projects with the intent to cause PLAINTIFF to incur additional and unnecessary costs and expenses and create difficulties for PLAINTFFS dealings with their business clients and associates; i. Informing or otherwise causing PLAINTIFFS' potential and current business clients and associates that they would be better served working with other developers and contractors, other than PLAINTIFF, because the City did not support PLAINTIFFS and would not approve or otherwise cause delays in PLAINTIFFS' proposed development projects; j. Informing or otherwise causing PLAINTIFFS' potential and current business clients and associates that PLAINTIFFS' businesses and business enterprises did not have or apply for the proper licenses, permits and approvals; k. Failing and refusing to issue PLAINTIFFS' business license and publishing false information that PLAINTIFFS did not have a business license or PLAINTIFFS were somehow delinquent in the renewal of the same; l. Failing and refusing to following proper procedures in reviewing and approval of PLAINTIFFS projects and/or issuing the necessary permits or approvals; m. Forcing and/or requiring PLAINTIFFS and their businesses and business enterprises to do go through procedural processes regarding projects that were unnecessary and/or not required by other developers or were necessary due to the Defendants incompetence or evil intent to harm PLAINTFFS; n. Publishing or otherwise informing others in the community, including potential and existing clients that PLAINTIFFS work was subpar, not comporting to reasonable standards and that the City would revoke or not renew PLAINTIFFS' business license to perform work within the City; o. Imposing unnecessary conditions and requiring the outlay of unnecessary expenditures/costs for approval of plans, parcel/subdivision maps, and the same that were not required by other developers and for other developments, plans, parcel/subdivision maps, amongst other things; and p. **Imposed unnecessary conditions and discretion unforeseen in past development agreements and projects, to further their intent to harm PLAINTIFFS.** (FAC, at ¶42)

**The Defendants, and each of them, have enforced rules, laws and conditions upon Plaintiffs that they have failed and refused to impose or enforce on other citizens and developers in their blatant unequal treatment of the laws and procedures against Plaintiffs.** (FAC, at ¶43)

**The Defendants acts and omissions to act, with the intent to harm the PLAINTIFFS, has now included other projects of the PLAINTIFFS and has hinder, delayed and impeded other projects to the detriment of the PLAINTIFFS, including the project known as the Railroad Project, where PLAINTIFFS are in contract with the Merced Union High School District and some private businesses. Defendants acts and omissions to act has caused further damages to Plaintiffs.** (FAC, at ¶44)

1    The aforementioned conduct is not privilege, is not an exercise of protected speech, or speech

2    regarding the City work, it is intentional tortious conduct directed at the Plaintiffs, and is evidence

3    of rampant corruption within the City, directed at Plaintiffs.

4    The fact of the matter is the FAC's allegations are regarding decisions made in the

5    "backroom" for the Defendants' personal gain and in pursuit of their personal goals, not made

6    publicly in the exercise of free speech or in pursuit of legitimate acts in the roles as City

7    employees, officials and staff. In sum, Defendants seek to hide their corruption by characterizing

8    their conduct as permissible, official City business.

9    Defendants' motion erroneously asserts that Plaintiff's claims stem from protected

10   governmental or regulatory communications. This is a mischaracterization. The gravamen of

11   Plaintiff's claims is Defendants' corruption, tortious and unlawful conduct.

12   **III.    STANDARD FOR MOTION TO DISMISS**

13   Under both federal and California law, a motion to dismiss should be denied unless it is clear

14   from the face of the complaint that the plaintiffs have failed to state a claim upon which relief can

15   be granted. The complaint must set forth sufficient information to suggest that there is some

16   recognized legal theory upon which relief may be granted. *District of Columbia v. Air Florida,*

17   *Inc.*, 750 F.2d 1077 (1984).

18   The Court must accept all well-pleaded factual allegations as true and draw all reasonable

19   inferences in favor of the plaintiffs. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This

20   principle ensures that the court evaluates the sufficiency of the complaint based on the facts

21   alleged, rather than any external evidence or arguments presented by the defendants.

22   As the Supreme Court held in *Iqbal* and *Twombly*, dismissal is inappropriate unless it is

23   clear that the plaintiff's claims are "factually implausible." In the instant case, the allegations in

24   the FAC, when viewed in the light most favorable to Plaintiffs, clearly state claims that are more

25   than plausible. A request for dismissal is premature and should not be granted.

26   **IV.    THE FAC ADEQUATELY STATES VIABLE CLAIMS FOR RELIEF**

27   **A. The FAC Sufficiently States A Cause of Action Against Defendants.**

28   Defendants seem to couch their defense in facts that do not exists—i.e., they, as the City

8

Opposition to Motion to Dismiss By Defendants' Michael Hayes and VH design Group Inc.

1    Engineer, were simply performing legitimate administrative functions.  See Motion at page 7,

2    footnote 2.  Defendants fail to acknowledge that the FAC alleges that they were conspirators and

3    aided and abetted the other Defendants to carry out a plan to harm Plaintiffs.

4      **1. The Defamation Claims Are Properly Pled and Should Not Be Dismissed.**

5        Defendants made knowingly false and damaging statements that harmed Plaintiff's

6    professional and business reputation. These statements are not opinion but assertions of fact

7    capable of being proven true or false. See *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 837. The

8    FAC identifies specific publications and speakers, satisfying *Reader's Digest Assn. v. Superior*

9    *Court* (1984) 37 Cal.3d 244, 253.  See the FAC at ¶¶42 and 45-57.

10     **2. The Claims For Intentional Interference With Prospective Economic Advantage,**

11        **Negligent Interference With Prospective Economic Advantage and Intentional**

12        **Interference With a Contractual Relationship Are Properly Pled and Should Not Be**

13        **Dismissed.**

14       The interference claims are properly pled as evidenced by the FAC at ¶¶ 28, 31- 35, 40, 41-

15   44, 58-81.

16     **3. The IIED Claim Is Properly Pled and Should Not Be Dismissed.**

17       Mr. Kessler, the owner and operator of the two other Plaintiffs has suffered emotional distress

18   due to the outrageous conduct of the Defendants, which has decimated his business enterprises

19   due to the unfair, unequal, intentionally tortious conduct and breach of obligations and public

20   trust of the Defendants and each of them, as alleged in the FAC.  See FAC at ¶¶ 18-44, 113-115,

21   116-123.  The IIED claim is properly pled and should not be dismissed.

22     **4. The Negligence Claim is Properly Pled and Should Not Be Dismissed.**

23       The claim for negligence is properly pled and should not be dismissed.  If the Court believes

24   that a more definite statement is required, Plaintiffs respectively request leave to amend.  See

25   FAC at ¶¶ 18-44, 134-139.

26     **5. The Claim for Extortion is Properly Pled and Should Not Be Dismissed.**

27       The claim for extortion is properly pled and should not be dismissed.  See FAC at ¶¶ 18-44,

28   189-195.

1    **6.  The Contract Claims are Properly Pled and Should Not Be Dismissed.**

2        The claims for breach of contract, breach of the implied covenant of good faith and fair dealing

3    and Promissory Estoppel are properly pled and should not be dismissed.  FAC at ¶¶ 18-44, 106-

4    111, 196-213.

5    **7.  The Constitutional and Civil Rights Claim Are Properly Pled And Should Not Be**

6        **Dismissed.**

7        The Constitutional and Civil Rights claims are properly pled and should not be dismissed.

8    FAC at ¶¶ 18-44, 112-115, 124-133, 140-181, 214-220, 226-236

9    **8.  The Cause of Action for Writ Relief Is Properly Pled and Should Not Be Dismissed.**

10       The cause of action for Writ of Mandate is properly pled and, with leave to amend, that sole

11   cause of action can be verified.

12   **9.  Fraud and Conspiracy Causes of Action Are Properly Pled and Should Not Be**

13       **Dismissed.**

14       The FAC details multiple misrepresentations of material fact made by Defendants, with

15   knowledge of falsity and intent to induce reliance, satisfying the pleading standard under *Lazar*

16   *v. Superior Court* (1996) 12 Cal.4th 631. Fraudulent conduct is never protected under the Anti-

17   SLAPP statute or otherwise. See *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th

18   141, 158.  FAC at ¶¶ 18-44, 82-98, 182-188.  Further, the Conspiracy claims are sufficiently pled.

19   See FAC at ¶¶ 18-44, 237-242.

20   **10. Intentional Interference with Prospective Economic Advantage**

21       Defendants' wrongful conduct interfered with Plaintiff's business relationships and

22   prospective opportunities. Plaintiff must show only that Defendants engaged in an independently

23   wrongful act — here, fraud and defamation — directed at disrupting a business expectancy. See

24   *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153–1154.  FAC at ¶¶ 18-

25   44, 58-82, 203-213.

26   **11. Breach of Contract and Implied Covenant**

27       The FAC alleges Defendants entered into agreements with Plaintiffs, including contractually

28   binding obligations which they breached in bad faith. Further, the breach of contract cause of

1    action is not subject to the Anti-SLAPP statute unless the claim is based solely on communicative

2    conduct — which is not the case here. See *Episcopal Church Cases* (2009) 45 Cal.4th 467, 478.

3    **12.    Defendants Purposely Misconstrue the Facts of the FAC**

4    Defendants have intentionally misconstrued the allegations in the FAC. Part of what the

5    FAC alleges is that Greg Thompson had final authority to establish implement/or enforce the

6    ordinances in question but when his attempts to coerce/extort Plaintiffs had unraveled the

7    approval by him and his subordinate Mark Pereida, regarding one of his projects—the Billboard

8    Project, was withdrawn and the Defendants: (1) made Plaintiffs go through the Planning

9    Commission; (2) created a deadlock with the mayor-elect Mike Nelson, who was at the time on

10    the Planning Commission, recusing himself for reasons he refused to state publicly, triggering an

11    appeal and substantial delays; (3) allowing Thompson, in concert with the other Defendants,

12    enough time to have another subordinate, defendant Michael Hayes of VVH, to trump up over a

13    hundred nonsense conditions for the project, all of which caused the project to be delayed for

14    years. The aforementioned caused Plaintiffs to be in breach of advertising contracts and stuck

15    with nearly $500,000 in materials for the project, sitting and wasting away in storage; all to punish

16    and harm Plaintiffs. See FAC at paragraphs 23, 28, 31-44. The Defendants herein did the same

17    or similar willful acts regarding the Rail Road Project, and numerous others, causing various

18    breaches between Plaintiffs and their clients, including the Merced Union High School District.

19    See Declaration of Alan Peterson In Support of Opposition to Motion to Dismiss.

20    **13. Request for Leave to Amend.**

21    If the court determines there are deficiencies in the FAC, Plaintiffs respectfully request leave

22    to amend the pleading. Pursuant to the Federal Rules of Civil Procedure section 15(a)(2), the a

23    request for leave to amend should be "freely" given. As a general rule, leave to amend a

24    complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). *King v. Cnty.*

25    *of Los Angeles*, No. 2:15-CV-07072-CAS-E, 2015 WL 6870010, at *3 (C.D. Cal. Nov. 6, 2015).

26    If the court grants leave to amend, none of the Defendants will be prejudiced at this early stage in

27    the case and Plaintiffs have not acted in bad faith or with a dilatory motive.

28    ///

**B. Detailed Factual Allegations Support Each Cause of Action**

Plaintiffs' FAC is not a collection of vague or conclusory allegations. It provides a detailed and thorough recounting of the facts that underlie the various claims. These include specific actions taken by Defendants that are far beyond ordinary business or administrative disputes. The allegations include coercion, fraud, conspiracy, and other intentional torts aimed at causing significant harm to Plaintiffs' business interests and reputations. For example, Defendants allegedly engaged in intentional interference with Plaintiffs' contracts, falsely represented approvals, and manipulated procedural outcomes to harm Plaintiffs. These detailed factual allegations go well beyond mere dissatisfaction and paint a clear picture of misconduct that Plaintiffs are entitled to have tested in discovery.

**C. Allegations Against City Employees Are Proper**

Defendants argue that the allegations against individual city employees are improper, but this argument fails. The FAC clearly identifies acts that fall outside the scope of the employees' official duties. Acts of fraud, conspiracy, and intentional misconduct are not protected by government immunity and are proper subjects for litigation.

Liability can attach to city employees individually if they act outside the scope of their authority. In the case of *Jones v. Czapkay*, the court determined that public officers could be held liable individually if they were acting without the scope of their authority or within the scope of their authority in a ministerial capacity only. See *Jones v. Czapkay*, 182 Cal.App.2d 192 (1960). This indicates that acts performed outside the scope of official duties can result in personal liability for city employees.

Plaintiffs are not merely suing Defendants for actions taken within the scope of their employment but rather for personal misconduct and abuse of power. The claims against these employees are proper, and immunity protections do not shield them from liability for intentional torts or conspiracy.

**V.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY PROCEDURAL DEFENSES**

**A. Plaintiff's Claims Are Not Barred by the Statute of Limitations, Cal. Gov. Code § 65009 Does Not Apply, Therefore The Motion Must Be Denied**

1  Defendants contend that Plaintiffs' claims are time-barred pursuant to Government

2  Code section 65009. This argument fails on both legal and factual grounds. A more than cursory

3  review of the plain language of Government Code section 65009 reveals that it does not apply to

4  the FAC.  First, the FAC is concerning commercial developments, not residential.  Government

5  Code section 65009 states: "(a)(1) The Legislature finds and declares that there currently is a

6  housing crisis in California and it is essential to reduce delays and restraints upon expeditiously

7  completing housing projects."

8  Further, the FAC does not seek to attack, review, set aside, void, or annul a decision of a city,

9  including but not limited to the implementation of a general plan goals and policies that provide

10  incentives for affordable housing, open-space and recreational opportunities and other related

11  public benefits.  See Government Code section 65009(a)(2).  The FAC seeks damages for

12  corruption and *ultra vire* acts by corrupt City officials targeting the Plaintiffs.  Moreover, the City

13  cannot rely on Government Code section 65009 since no public notice has issued regarding the

14  claims in the FAC and even if it did the Defendants cannot invoke the statute as it failed to include

15  in any purported public notice regarding the claims in the FAC the following language required

16  by Government Code section 65009(b)(2):

17  "If you challenge the (nature of the proposed action) in court, you may be limited to raising
   only those issues you or someone else raised at the public hearing described in this notice,
18  or in written correspondence delivered to the (public entity conducting the hearing) at, or
   prior to, the public hearing."
19

20  Thus, for this independent reason, the Motion must be denied.

21  1.  Defendants' claim because their corruption directed at Plaintiffs commenced in

22  2022 that the FAC is barred by the statute of limitations.  See Plaintiffs Motion, at 19:15-16.

23  However, the corruption, tortious conduct and breach of obligations by the Defendants has been

24  ongoing since 2022, as clearly stated in the City of Atwater Claim Forms referred to by the

25  Defendants ("July 21, 2021 to the Present").  See the City of Atwater Claim Forms **Exhibits A**

26  and **B** to the Defendants Request For Judicial Notice.

27  The continuing course of conduct doctrine holds that when a wrong consists of a

28  continuing course of conduct, the statute of limitations does not begin to run until that course of

---

13

1  conduct is completed. *Simons v. Yale University,* 712 F.Supp.3d 267, 286 (2024). This doctrine

2  reflects the policy that, during an ongoing relationship, lawsuits are premature because specific

3  tortious acts or omissions may be difficult to identify and may yet be remedied. *Id.; see also*

4  *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197–98.

5      The continuing violation doctrine serves a number of equitable purposes. Some injuries
6  are the product of a series of small harms, any one of which may not be actionable on its
   own. (See National Railroad Passenger Corporation v. Morgan, supra, 536 U.S. at p. 115,
7  122 S.Ct. 2061.) Those injured in such a fashion should not be handicapped by the
   inability to identify with certainty *1198 when harm has occurred or has risen to a level
8  sufficient to warrant action. (Yanowitz v. L'Oreal USA, Inc. (2005) 36 Cal.4th 1028,
   1058, 32 Cal.Rptr.3d 436, 116 P.3d 1123; Richards v. CH2M Hill, Inc., supra, 26 Cal.4th
9  at pp. 820–821, 111 Cal.Rptr.2d 87, 29 P.3d 175.) Moreover, from a court-efficiency
   perspective, it is unwise to impose a limitations regime that would require parties to run
10 to court in response to every slight, without first attempting to resolve matters through
   extrajudicial means, out of fear that delay would result in a time-barred action.
11 (Yanowitz, at pp. 1058–1059, 32 Cal.Rptr.3d 436, 116 P.3d 1123; Richards, at pp. 820–
   821, 111 Cal.Rptr.2d 87, 29 P.3d 175.) Allegations of a pattern of reasonably frequent and
12 similar acts may, in a given case, justify treating the acts as an indivisible course of
   conduct actionable in its entirety, notwithstanding that the conduct occurred partially
13 outside and partially inside the limitations period. (Yanowitz, at p. 1059, 32 Cal.Rptr.3d
   436, 116 P.3d 1123; Richards, at p. 823, 111 Cal.Rptr.2d 87, 29 P.3d 175; see
14 also Komarova v. National Credit Acceptance, Inc. (2009) 175 Cal.App.4th 324, 345, 95
   Cal.Rptr.3d 880 [applying the doctrine to harassing debt collection activities].)

15 *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197–98 (2013)

16     Therefore, for this independent reason, the Motion must be denied.

17     2.  Further, under the discovery rule, a cause of action does not accrue until the plaintiff

18 discovers, or reasonably should have discovered, the injury and its cause. See *Norgart v. Upjohn*

19 *Co.* (1999) 21 Cal.4th 383, 397.

20     The statute of limitations does not bar Plaintiffs' claims. Under the discovery rule, the cause

21 of action accrues when the plaintiff learns, or should have learned, of the facts constituting the

22 wrongful act. See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807. Additionally,

23 where a defendant's fraudulent concealment prevents timely discovery, equitable tolling applies.

24 (*Sofranek v. Merced County* (2007) 146 Cal.App.4th 1238, 1250–1251.) Defendants' own

25 misconduct — including concealing critical facts — justifies tolling in this case.

26     The FAC adequately alleges that Plaintiff did not and could not have discovered the full extent

27 of the harm — including Defendants' fraudulent acts and defamatory statements — until certain

28 key events and disclosures occurred. Moreover, equitable estoppel bars Defendants from invoking

1  the statute of limitations where their own conduct — including fraudulent concealment —
2  prevented timely filing. See *Ramos v. County of Madera* (2019) WL 2092748.

3  For this independent reason the FAC is timely and the Motion should be denied.

4  **B. Plaintiffs Have Complied With the Government Code And The Motion Should Be**
5  **Denied.**

6  The Defendants claim that the Plaintiffs failed to comply with the Government Code since
7  Plaintiffs purportedly failed to name certain defendants set forth in the FAC in its City of Atwater
8  Claim Form.  The Defendants claim in the Motion, at 21:28—22:4, that Plaintiffs failed to list
9  Michael Hayes, the City of Atwater Building Department and Rhyolite Development &
10  Construction, Inc. on the Claim form; such claim is false, as proved by the Defendants Request
11  for Judicial Notice, Exhibits A and B—the Plaintiffs' Claim Forms.

12  First, the City of Atwater Claim Form is one page, which is intentionally insufficient to
13  include all of the necessary information required by the Government Code.  Second, as evidenced
14  by the Defendants Request For Judicial Notice, Exhibits A and B, there are attachments to the
15  Plaintiffs' Claim Forms, which includes, at pages RJN00021 and RJN00043, a letter from
16  Plaintiffs' counsel specifically setting forth that Michael Hayes and his company defendant VVH
17  Engineering, which served as the City Engineer during all times material to the FAC, are part of
18  the cause for the Plaintiffs' claims.  Third, while the City of Atwater Building Department is not
19  set forth specifically, each of its responsible employees are set forth.  The City of Atwater
20  Building Department is part of the Community Development Department.  See Plaintiffs RJN
21  **Exhibit 7,** which is the City's webpage stating the Building Department is part of the Community
22  Development Department.  Moreover, Greg Thompson, as the City of Atwater Community
23  Development Director, Mark Perieda, as the Chief Building Official, were specifically listed on
24  the Claim Form.  The Government Claims Act mandates that a claim must include information,
25  such as general description of the injury, damage, or loss incurred, and the names of the public
26  employees causing the injury, damage, or loss, if known.  *Hernandez v. City of Stockton* (2023)
27  90 Cal.App.5th 1222; see also Gov. Code section 910. Plaintiffs have properly complied with the
28  Government Code.  As to defendant Rhyolite Development & Construction, Inc., a company

1   wholly owned by Greg Thompson, it is not a City employee and therefore, was not required to be

2   listed on the Claim Forms.[1]

3       As to AG-K Properties, LLC, it is wholly owned by Bradley Kessler, a fact known to the

4   Defendants. Under the doctrine of substantial compliance, an error in naming a wholly owned

5   company of one of the named claimants, is not fatal. Such is based on the premise that substantial

6   compliance fulfills the purpose of the claims statutes, namely, to give the public entity timely

7   notice of the nature of the claim so that it may investigate and settle those having merit without

8   litigation. *Connelly v. Cnty. of Fresno,* 146 Cal. App. 4th 29, 38 (2006).

9       If a claim fails to comply substantially with these requirements, the public entity must

10  notify the claimant of the deficiencies within 20 days, stating with particularity the defects or

11  omissions. See West's Ann.Cal.Gov.Code § 910.8. Failure to provide such notice waives any

12  defense as to the sufficiency of the claim, except when the claim fails to state an address for

13  notices. See West's Ann.Cal.Gov.Code § 911.

14      In *Westcon Construction Corp. v. County of Sacramento,* the court held that a "claim as

15  presented" is a claim that is defective but nonetheless puts the public entity on notice that the

16  claimant is attempting to file a valid claim and that litigation will result if it is not resolved. This

17  triggers a duty on the part of the governmental entity to notify the claimant of the defects or

18  omissions in the claim. See *Westcon Construction Corp. v. County of Sacramento,* 152

19  Cal.App.4th 183 (2007). Similarly, in *Connelly v. County of Fresno,* the court found that the

20  inclusion of the word "unspecified" did not render the claim hopelessly vague for purposes of

21  determining substantial compliance, as the information provided was sufficient to enable the

22  public entity to investigate and settle the claim. See *Connelly v. County of Fresno,* 146

23  Cal.App.4th 29 (2006). If a public entity fails to notify the claimant of deficiencies in a claim that

24  does not substantially comply with the statutory requirements, it loses the right to assert

25  noncompliance as an affirmative defense. See *Perez v. Golden Empire Transit Dist.,* 209

26  Cal.App.4th 1228 (2012). This principle ensures that claimants are not unfairly barred from

27

28
_____

[1] It is important to note that the City has subsequently terminated Greg Thompson, for cause.

1  pursuing their claims due to minor technical deficiencies, provided the claim substantially
2  complies with the statutory requirements and fulfills the purpose of the claims statutes.

3      While minor deficiencies in a government claim can lead to its dismissal, the doctrine of
4  substantial compliance and the requirement for public entities to notify claimants of deficiencies
5  provide protections to ensure that meritorious claims are not unfairly barred.

6      For this independent reason, the Motion must be denied.

7  **C. Plaintiffs Have Exhausted Administrative Remedies Where Required, Therefore,**
8      **the Motion Must Be Denied.**

9      Defendants argue that Plaintiff failed to exhaust administrative remedies. The argument is
10  nonsensical as the Defendants have intentionally misconstrued/misrepresented the nature of the
11  causes of action set forth in the FAC. The FAC alleges that the Defendants are guilty of
12  corruption, intentionally tortious conduct, and breach of obligations and the public trust.  There
13  are no administrative remedies to exhaust for the claims set forth in the FAC.  Further, California
14  courts have held that intentional tortious conduct such as claims for defamation and fraud do not
15  require administrative exhaustion. See *McGill v. City of Redding* (1996) 47 Cal.App.4th 235, 241;
16  See also *Gonzalez v. County of Los Angeles* (2006) WL 589285.

17      Furthermore, Plaintiffs allege that necessary claims were submitted to the City in a timely
18  fashion and that certain claims were effectively rendered non-reviewable due to the City's failure
19  to act. Where administrative remedies are inadequate or unavailable, judicial review is
20  appropriate. See *Yaka v. City of San Jose* (2008) 160 Cal.App.4th 139, 145.

21      Here, Plaintiff either followed all applicable procedures or was prevented from doing so by
22  Defendants' obstruction. Moreover, the tort claims asserted — particularly those sounding in
23  fraud and defamation — do not require exhaustion under the Government Claims Act. See *Turner*
24  *v. State of California* (1991) 232 Cal.App.3d 883, 888.

25      Nevertheless, as alleged in the FAC, at paragraphs 18-21, the Plaintiffs properly sought and
26  exhausted all administrative remedies.

27      Any post-appeal actions by Defendants fall outside the scope of administrative processes
28  and do not require further administrative exhaustion.

1    For this independent reason, the Motion should be denied.

2    **VI.    IMMUNITY DEFENSES DO NOT APPLY AT THE PLEADING STAGE**

3    **A.  Government Code Immunities Are Limited**

4    Defendants assert that they are immune from liability under various government code

5    provisions, including § 820.2 (discretionary immunity). However, immunity does not apply to

6    actions taken with malice, fraud, or conspiracy. Plaintiffs allege Defendants Hayes and others

7    acted outside any protected discretion by undermining approvals, coercing a sale, and retaliating

8    when refused. These claims fall squarely within the exceptions to immunity. Plaintiffs' allegations

9    of intentional torts, including fraud, misrepresentation, and conspiracy, fall outside the scope of

10   immunity protections.

11   **B.  Plaintiff's Claims Are Not Barred by Governmental Immunity And The Motion**

12   **Should Be Denied.**

13   1.    Defendants invoke various Government Code immunities, but these immunities

14   do not apply to the intentional torts and constitutional violations alleged in the FAC. Government

15   employees are not immune from liability for intentional torts. See *Cameron v. State of California*

16   (1967) 66 Cal.2d 25, 29. The Government Claims Act immunities cited by Defendants do not

17   shield them from liability for the conduct alleged. California courts have consistently held that

18   government actors may be liable for intentional torts, including defamation and fraud. See

19   *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 989.

20   2.    Public employees are not immune under Government Code § 820.2 when they act

21   with malice, fraud, or oppression. See *Cornell v. City and County of San Francisco* (2017) 17

22   Cal.App.5th 766, 800–801. Moreover, constitutional violations and intentional interference with

23   contractual relationships fall outside the scope of statutory immunities. See *Simmons v. City of*

24   *Sacramento* (2004) 32 Cal.4th 480, 491.

25   3.    Each of the Defendants aided and abetted and were the co-conspirators of each

26   other, in undertaking or failing to undertake the actions complained of in the FAC.  (FAC, at

27   paragraphs 23 and 24.  The Defendants concocted a plan to harm Plaintiffs and acted for the

28   purpose of their own personal gain.

4.    Defendants' reliance on Government Code section 821.6 is misplaced and inapplicable here.  The Defendants are not being sued for an injury caused by their instituting or prosecuting any judicial or administrative proceeding within the scope of their employment. Cal. Gov't Code § 821.6.  Defendants are being sued for the intentional tortious conduct, breach of duties and public trust, *inter alia*.  Defendants Hayes and VVH allegedly abused their positions to pursue private gain and retaliated against Plaintiffs. Such conduct is not "official duty" or "within the course of an official proceeding." Plaintiffs allege manipulation of safety reviews and engineering recommendations to frustrate the Plaintiffs projects—well beyond any ministerial function.

Plaintiffs have alleged facts that demonstrate Defendants acted outside the scope of their official duties. The coercion, misrepresentations, and attempts to manipulate Plaintiffs and to hinder and delay Plaintiffs projects are not protected by immunity. These are intentional acts of misconduct and abuse of power that are not shielded by government immunity.

5.    Defendants reliance on Civil Code section 47 is misplaced and inapplicable here. The FAC alleges that Defendants, including Greg Thompson intentionally harmed Plaintiffs including defaming them and their business in public, outside the proper discharge of their duties and acting to intentionally harm the Plaintiffs for their own personal gain and not in the interest of the City nor the citizens of the City.  (FAC, at paragraphs 8, 35, 85, 113, 119, 149, 157, 176, 183, 190, 191, 201, 205, and 231).  See also the Declaration of Chris Morrow in Support of Plaintiffs Opposition to the Motion to Dismiss ("Morrow Dec."); see also the Declaration of Alan Peterson in Support of Plaintiffs Opposition to the Motion to Dismiss.

For the aforementioned reasons, the Motion must be denied.

**C. Conspiracy Claims Involve Private Actor (VVH) and Mixed Motives**

Defendant VVH, acting through its agent Hayes, is alleged to have acted in both public and private capacities. The mixed motives and dual roles of this Defendant create factual issues that cannot be resolved on a motion to dismiss. The conspiracy claims involve complex factual allegations that require discovery and trial to resolve.

Plaintiffs allege Hayes—acting as both a public official and private owner of VVH—used his position to sabotage the projects of Plaintiffs for personal and third-party gain. Mixed motives,

1  dual roles, and collusion with other Defendants (including private interests) create factual disputes
2  inappropriate for a motion to dismiss.

3  **VII.    PLAINTIFFS' CLAIMS ARE NOT DERIVATIVE OF LAND USE DISPUTE**

4  **A. Claims Arise From Misconduct, Not Permitting Decisions Alone**

5      Plaintiffs'    claims    are    rooted    in    Defendants'    wrongful    conduct,    including
6  misrepresentations, coercion, and fraudulent attempts to manipulate Plaintiffs into selling their
7  business, and to hinder and delay Plaintiffs projects. These are independent of any land use
8  decision and are based on intentional misconduct that is actionable under multiple legal theories.

9      Defendants overstate the land use context to obscure their misconduct. The FAC alleges
10  intentional misrepresentation of prior approvals, abuse of the CUP process, and intentional
11  interference after approvals were granted. These acts do not arise from legitimate planning
12  decisions but from fraudulent misuse of process.

13  **B. Plaintiffs Had Reasonable Reliance Based on Representations**

14  Plaintiffs reasonably relied on Defendants' representations regarding the approval of permits
15  and other approvals. The FAC alleges that the "approval" was later reversed without procedural
16  due process and under suspicious circumstances following refusal to sell. This is actionable under
17  multiple tort theories and presents fact issues not resolvable at this stage. These representations
18  were made in bad faith and were designed to mislead Plaintiffs. These factual issues, including
19  Plaintiffs' reliance on those representations, are matters for trial.

20  **VIII.    CONCLUSION**

21      Plaintiffs have sufficiently alleged facts supporting their causes of action. Defendants'
22  Motion to Dismiss is an attempt to resolve factual disputes prematurely and impose defenses that
23  are not appropriate at the pleading stage. The Court should deny Defendants' Motion to Dismiss
24  in its entirety.

25  For the foregoing reasons, Defendants' motion to dismiss pursuant to the Federal Rules of
26  Civil Procedure, Rule 12(b)(6) should be denied in its entirety. Plaintiff's claims are not based on
27  protected speech, are timely filed, adequately pled, and not barred by immunity or administrative
28  exhaustion requirements, *inter alia*.

1    In the alternative, should the Court find any p\leading deficiency, Plaintiff respectfully

2  requests leave to amend to cure such defects, consistent with the liberal standard for amendment

3  under California law and Federal law.

4    Alternatively, if the Court finds any deficiencies in the FAC, Plaintiffs request leave to

5  amend to cure any alleged deficiencies.

6

7

       Dated:  April 25, 2025                              Respectfully submitted,

8
                                                           **CUTTONE & ASSOCIATES**
9

10

11                                          BY: _____
                                                 BRIAN K. CUTTONE, Attorney
12                                               for Plaintiffs, BRADLEY S.
                                                 KESSLER; BK-INDUSTRIES,
13                                               INC. and AG-K PROPERTIES,
                                                 LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

Opposition to Motion to Dismiss By Defendants' Michael Hayes and VH design Group Inc.