**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

BRADLEY S. KESSLER, et al.,

Plaintiffs,

v.

CITY OF ATWATER, et al.,

Defendants.

Case No. 1:25-cv-00288 JLT EGC

ORDER GRANTING MOTIONS TO DISMISS AND STRIKE IN PART

(Docs. 11, 13, 15)

The plaintiffs allege that several officials in the City of Atwater, California have used their influence and authority to extract personal benefits from the city's contracts and to damage the plaintiffs' construction and real estate businesses. The city and its officials portray the lawsuit as an attempt to punish them for performing their ordinary duties and for enforcing municipal ordinances. They move to strike and dismiss the complaint in its entirety. (Docs. 11, 13, 15.) Those motions are **GRANTED IN PART** with leave to amend in part, as explained in this order.

**BACKGROUND**

The plaintiffs are Bradley Kessler and two companies affiliated with him: BK-Industries, Inc. and AG-K Properties, LLC. (Doc. 1 at 43–44.) At this early point in the litigation, the Court must assume their allegations are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *as amended*, 897 F.3d 1224 (9th Cir. 2018). They allege that they have worked as real estate

developers and licensed contractors in Atwater, California for many years. (*See id.*)

In the summer of 2021, BK Industries signed an agreement with the City of Atwater. (*Id.* at 44.) Under their agreement, the company would construct and maintain a digital billboard on a small plot of the City's land, and they would share the advertising income it generated. (*See id.*) The plaintiffs did not attach a copy of their agreement to their complaint, but it is in the public record, and no one disputes its contents, so the Court can consider it. (*See* Doc. 16 at 12–28); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). It includes a proviso:

> At all times, all structures, poles, advertising, signs, and any use of the Property shall comply with the Atwater Municipal Code, including all zoning, planning, building, and development standards requirements. Nothing in this Lease is intended to waive the City's land use authority or otherwise entitle or vest any land use or development right to Lessee.

(Doc. 16 at 13.) That is, the billboard would be subject to all the ordinary land use, building, planning, and other rules and regulations.

Kessler was led to believe, however, that none of these rules and regulations would actually pose any problem, so he moved forward with preparatory work over the next several months. (*See* Doc. 1 at 44.) For example, he bought liability insurance, hired a traffic safety consultant, and paid an engineering firm for the necessary plans. (*See id.*) The next summer, the city's community development director and its chief building officer told Kessler he should continue, reassuring him that the city council and the building department would approve their plans on an expedited basis. (*Id.* at 44–45.) Relying on these reassurances, the plaintiffs bought supplies, paid for blueprints, rented equipment, began looking for potential ad buyers, and hired an attorney to help with the marketing contracts. (*See id.* at 45.) They spent hundreds of thousands of dollars in all. (*See id.*)

In the midst of these preparations, the city's community development director, Greg Thompson, approached Kessler and the other plaintiffs again. (*Id.*) He tried to convince them to abandon the billboard project and sell their rights to a third party. (*Id.*) Kessler refused. (*Id.*) He came to believe that Thompson had connections with this third party, which meant he would benefit personally if the third party took over the deal. (*See id.* at 45–46.)

As if to confirm this intuition, Thompson told the plaintiffs that they would have to jump through a few more "procedural hoops" after they rejected his entreaty. (*Id.* at 46.) Progress stalled. The City stopped helping with the necessary building permits and other approvals, and its officials told the plaintiffs that they would now need to appear before the planning commission. (*See id.*) When they did, one of the five members (the mayor elect, Michael Thompson) recused from the vote on their billboard project, citing a potential conflict of interest in the event of an appeal. (*See id.*; *see also* Doc. 16 at 195–99 (meeting minutes).) His recusal led to a deadlocked vote, with two votes in favor of the project and two votes against it. (*See* Doc. 1 at 46.) An appeal to the City Council would be necessary, and hence the project was further delayed. (*See id.*) The plaintiffs also learned that the city's engineer and his consulting company had recommended a "multitude" of new and excessive conditions, which would lead to even further delays, regardless of the appeal. (*See id.* at 46.)

The appeal was ultimately successful. (*See* Doc. 16 at 317–27.) Even still, the delays and additional time and work proved to be very costly in the end. (*See* Doc. 1 at 48–49.) Their experience has led them to believe that City officials had "developed ill will" towards them and decided to drive up their costs and besmirch their good reputations. (Doc. 1 at 47.) The plaintiffs allege, for example, that city officials have spread false rumors about how the plaintiffs' permit and approval applications were late, that they did not pay necessary fees or submit the proper plans, and that their work was "subpar." (*See id.*) This has damaged the plaintiffs' standing as contractors and developers and the reputations they had built over the course of many years. (*See id.* at 44, 48.) The plaintiffs also allege that city officials have denied them permits and approvals on other projects without any good reason, including in a project that they refer to as the "Railroad Project." (*See id.* at 48–49.)

Two of the plaintiffs (Kessler and BK Industries) but not the third (AG-K Properties), sent pre-suit claim forms to the City, first in February 2024, then again in September of the same year. (Docs. 1 at 42; 16 at 9, 32.) The city rejected both. (Doc. 1 at 42.) Kessler, BK, and AG-K then filed this lawsuit. (*See* Doc. 1 at 7.) They filed first in the state court, but after an amendment to the complaint, the defendants removed the case to this Court. (*See* Doc. 1 at 1–5.)

The plaintiffs assert a variety of claims—twenty-nine in total—from defamation and fraud to breach of contract and public corruption. They assert most of these claims against all of the defendants collectively: the City of Atwater and its building department, Greg Thompson (the building director), Mark Pareida (the chief building official), Stephanie Ruiz (a building technician and administrative assistant), Michael Nelson (the planning commissioner and mayor), Jacquyn Lopez (a member of the community development and resources commission), Michael Hayes (the city engineer), VH Design Group (a business owned by Hayes), and Rhyolite Development & Construction, Inc. (a business owned by Thompson). The exceptions are the plaintiffs' claims for breach of contract and for breach of a mandatory duty, which they assert against the city only. (*See* Doc. 1 at 59, 78.)

The plaintiffs moved to remand the case to state court; the defendants moved to strike several of the plaintiffs' claims under California Code of Civil Procedure 425.16 and to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). (*See* Docs. 11, 13, 15.) The Court denied the plaintiffs' motion to remand in a previous order. (Doc. 47.) Briefing on the defendants' motions to strike and dismiss is now also complete (*see* Docs. 28, 28-3, 34, 35, 37), and the Court determined that oral arguments would not be necessary (*see* Doc. 18). The Court begins with the special motions to strike.

**SPECIAL MOTION TO STRIKE**

The California Code of Civil Procedure allows defendants to file special motions to strike meritless causes of action that "risk chilling 'continued participation in matters of public significance.'" *Serova v. Sony Music Ent.*, 13 Cal. 5th 859, 871 (2022) (quoting Cal. Civ. P. Code § 425.16(a)). The state created this procedure in the 1990s with the goal of protecting "nonprofit corporations and common citizens" from the "large corporate entities and trade associations" who might use litigation to squelch any opposition to their endeavors. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 143 (2019) (citation and quotation marks omitted). In the "paradigmatic" example of such a "strategic lawsuit against public participation" or "SLAPP," "a well-funded developer" imposes "litigation costs on citizens who protest, write letters, and distribute flyers in opposition to a local project." *Id.* But California courts have

entertained a much wider range of motions than this, including motions by government officials who—like the defendants in this case—face allegations about what they have done and said in their official capacities. *See Vargas v. City of Salinas*, 46 Cal. 4th 1, 17 (2009) (collecting authority).

A special motion to strike, authorized by section 425.16(b) of the state's code of civil procedure, is typically litigated in two steps: first, by deciding whether the case involves any "protected activities," and second, if so, by determining whether the causes of action that are based on those protected activities have "sufficient merit." *See Serova*, 13 Cal. 5th at 872.

"At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). The "activities" that qualify as "protected" are defined in subsection 425.16(e). *See Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1063 (2017). It is not a constitutional question. *See City of Montebello v. Vasquez*, 1 Cal. 5th 409, 422 (2016). Subsection 425.16(e) first lists three types of written or oral statements or writings: (1) "before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; (2) "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"; and (3) "in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. P. Code § 425.16(e). Lastly, under a catch-all provision, it states that "any other conduct" is also protected if it is "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.* § 425.16(e)(4). When a plaintiff seeks relief "based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." *Baral*, 1 Cal. 5th at 396.

At the second step, if the defendant identifies allegations of protected activity, and if the defendant also shows that the plaintiffs are asserting one or more claims based on those allegations, then the burden "shifts to the plaintiffs to demonstrate that each challenged claim . . . is legally sufficient and factually substantiated." *Id.* The court "must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable

judgment. If not, the claim is stricken." *Id.* "Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Id.*

Defendants can file special motions to strike in federal court just as they can in state court. *Gunn v. Drage*, 65 F.4th 1109, 1119 (9th Cir. 2023). But because some parts of section 425.16 conflict with various federal procedural rules, a special motion to strike sets off a different process in federal court than it does in state court. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). For now, the most relevant of these differences is that a federal court must "review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood*, 890 F.3d at 833. If an anti-SLAPP motion is "based on legal deficiencies" and "purely legal arguments," then the court treats the motion to strike as it would a motion to dismiss under Federal Rules of Civil Procedure 8 and 12. *Id.* (citation omitted). If, by contrast, the defendant makes a "factual challenge, then the motion must be treated as though it were a motion for summary judgment, and discovery must be permitted." *Id.* (citation omitted).

In this case, the defendants' arguments are purely legal. They take the allegations as the plaintiffs have presented them, supplemented by a few undisputed matters of public record, which are appropriate subjects of judicial notice. The Court will accordingly treat their motions to strike as motions to dismiss under Rule 12. The defendants therefore bear the burden to identify some "protected activity" within the complaint's allegations and the relevant public record. *See Baral*, 1 Cal. 5th at 396.

The defendants begin by citing the plaintiffs' allegations about how the city's community development director and chief building official (defendants Thompson and Pereida) originally approved the billboard design, told the plaintiffs to get started, assured them that the approval process would be streamlined and expedited, and persuaded them to spend significant sums of money. (*See* Doc. 15 at 16 (citing Doc. 1 at 44–45).) By the plaintiffs' own allegation, "the application and building process with the City" was underway at the time. (Doc. 1 at 45.) The defendants' alleged promises about the relevant "issue," i.e., the city's approval, were "in connection" with that ongoing process, so Thompson's and Pereida have shown that their alleged

statements fall within the terms of section 425.16(e)(2) and are protected.

The defendants next cite the plaintiffs' allegations about how Thompson later urged them to abandon the billboard project and to sell their interests to a third party. (*See* Doc. 15 at 16 (citing Doc. 1 at 45–46).) These statements were not "before" a legislative, executive, judicial, or similarly official proceeding under section 425.16(e)(1). In context, they appear to have been communicated privately. (*See* Doc. 1 at 45–46.) Nor were these statements "made in connection with an issue under consideration or review" before some legislative or executive body under section 425.16(e)(2). The "issue" under consideration before the planning commission and city council was whether the city would approve the billboard project and what conditions it would impose, not whether the plaintiffs would abandon or sell their rights, and not whether the plaintiffs or a third party would complete the project if it were approved. In the defendants' telling, the project and the relevant plans would need the city's approval no matter who completed it. (*See, e.g.*, Doc. 15 at 28 (citing relevant portions of the city's municipal code).) The defendants do not rely on any other subsections within section 425.16(e), so they have not shown that the statements in this second category are protected.

Third, the defendants cite the plaintiffs' allegations about the defamatory statements they are said to have made to the plaintiffs' current and potential clients about unmet deadlines, unpaid fees, shoddy work, lapsed licenses, and so on. (*See* Doc. 15 at 16 (Doc. 1 at 48–49).) The complaint does not allege that the defendants made these statements before an official proceeding, and the public record does not show that they did. Nor is it clear from the complaint or the public record how these allegedly defamatory statements were connected with the billboard project and its delayed approval. The plaintiffs do not allege, for example, that the billboard project's approval hung up on a particular deadline or missing license, nor that the defendants used false claims about unpaid fees to delay their decision. The context of the plaintiffs' allegations implies instead that they will attempt to prove that the defendants made false claims independently of the approval process and in retaliation for the plaintiffs' refusal to sell their interests, or perhaps as a result of a more general animosity or bias. (*See, e.g.*, Doc. 1 at 47–48.) For these reasons, the defendants' allegedly defamatory statements were neither "before" an

official proceeding under section 425.16(e)(1), nor "in connection with" an issue under review in such a proceeding under section 425.16(e)(2). The defendants again cite no other portions of section 425.16(e), so they have not carried their burden to show that the statements in this third category were protected.

Finally, the defendants cite the allegations about how they delayed the regulatory process, reversed the approvals they previously granted, imposed new and costly conditions, and subjected the plaintiffs to inconsistent and discriminatory standards. (*See* Docs. 14 at 11–12 (citing Doc. 1 at 46); 15 at 45–49 (citing Doc. 15 at 45–49).) Although the defendants rely expressly on sections 425.16(e)(1) and (2)—which both refer to "statements" and "writings"—they have identified only two "statements" or "writings" related to the allegations in this final category: first, the recommendations submitted by the city engineer (Hayes) and his company (VVH Consulting Engineers); and second, the mayor elect's (Nelson's) recusal from the planning commission vote and his statement about his recusal. (*See* Doc. 1 at 46.) The recommendations by Hayes and VVH were "in connection" with the approval issue under review and thus fit the terms of subsection 425.16(e)(2). Nelson's statements and his recusal were "before" a proceeding under subsection 425.16(e)(1); *see also City of Montebello*, 1 Cal. 5th at 413 ("[V]otes taken after a public hearing qualify as acts in furtherance of constitutionally protected activity.") Both activities were "protected."

The defendants contend that many other allegations describe protected activities as well. The defendants refer generally to the submissions they made and the documents they filed, but they do not identify these documents or statements. It is their burden to lay out the relevant statements and writings and to show that each fits the definitions in section 425.16(e). *See Park*, 2 Cal. 5th at 1063; *Baral*, 1 Cal. 5th at 396. Because they have not carried that burden, they cannot show that these other matters are protected. *See Shahbazian v. City of Rancho Palos Verdes*, 17 Cal. App. 5th 823, 834–35 (2017).

The defendants also contend more generally that almost everything they did was connected to the initiation, pursuit, or resolution of official proceedings before the planning commission and city council. (*See, e.g.*, Docs. 14 at 12; 15 at 17.) Planning commission and city

council meetings are official proceedings in a general sense; that is true. *See Durkin v. City & County of San Francisco*, 90 Cal. App. 5th 643, 651–52 (2023) (citing *Midland Pac. Bldg. Corp. v. King*, 157 Cal. App. 4th 264, 272 (2007)). Building permits can also be hotly contested matters of public interest. But even so, a defendant who relies on the anti-SLAPP statute must identify some statement, writing, or action that meets the statutory definition of a protected activity. *See Park*, 2 Cal. 5th at 1063; *Shahbazian*, 17 Cal. App. 5th at 834–35. The anti-SLAPP statute "does not protect a governmental entity's decisions to issue or deny permits." *Shahbazian*, 17 Cal. App. 5th at 826. "Acts of governance mandated by law, without more, are not exercises of free speech or petition." *San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Emps.' Ret. Ass'n*, 125 Cal. App. 4th 343, 354 (2004). And not every statement, writing, and action related to an official proceeding or decision fits the four-part statutory definition. *See, e.g.*, *Mission Beverage Co. v. Pabst Brewing Co., LLC*, 15 Cal. App. 5th 686, 704 (2017). The purposes of section 425.16 "are promoted, not impaired, by differentiating between individual speech that contributes to a public entity's decision and the public entity decision itself." *Park*, 2 Cal. 5th at 1071 n.4.

The plaintiffs argue for their part that the defendants' actions were not only beyond the realm of protected petitioning or speech but also unprotected because they were illegal. (*See* Doc. 28-3 at 17–18.) The intuition behind this argument cannot be questioned. As the California Supreme Court held in *Flatley v. Mauro*, that "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law . . . cannot use the anti-SLAPP statute to strike the plaintiff's complaint." 39 Cal. 4th 299, 305 (2006). But in this situation, the illegality of the defendants' actions is not a simple thing to prove. It must be established either by the defendant's own concession "or by uncontroverted and conclusive evidence." *Id.* at 320. And in federal court, allegations alone cannot show that the defendant's conduct was illegal as a matter of law. *See Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1121 (9th Cir. 2017). Otherwise, a plaintiff could evade virtually any anti-SLAPP motion "simply by alleging criminal conduct." *Id.* The defendants have not conceded here that their actions were illegal, and no "uncontroverted and conclusive evidence" establishes as much as a matter of law, so the plaintiffs cannot rely on the "illegal" conduct exception in *Flatley*.

To summarize, then, the defendants have carried their burden to identify three protected activities within the complaint's allegations and the public record: (1) Thompson's and Pereida's early assurances that the billboard project had been approved and that the regulatory process would be expedited and streamlined, (2) the recommendations by Hayes and his company, VVH, and (3) Nelson's statements during the planning commission hearing and his recusal from the vote. The next question is whether these activities form the basis of any claims within the operative first amended complaint. As noted, it is the defendants' burden to show that they do. *See Baral*, 1 Cal. 5th at 396.

That burden is not trivial. California appellate courts have repeatedly emphasized that it is not enough for a defendant to show that a challenged decision or action followed on the heels of a protected activity, was triggered by a protected activity, or was undertaken in response to or because of a protected activity, nor that a particular claim will likely be proven using evidence about a protected activity. *See, e.g.*, *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 890–91, 898 (2019); *Park*, 2 Cal. 5th at 1064; *City of Cotati v. Cashman*, 29 Cal. 4th 69, 77–78 (2002); *Durkin*, 90 Cal. App. 5th at 653–54; *Shahbazian*, 17 Cal. App. 5th at 834–35; *San Ramon Valley Fire Prot. Dist.*, 125 Cal. App. 4th at 353–54. If these looser types of logical connections were enough to trigger the protections of section 425.16, then the anti-SLAPP statute would cover a broad swath of lawsuits about the "decisions government entities make every day," from budgets to zoning to dangerous conditions on public property. *See Shahbazian*, 17 Cal. App. 5th at 839. The law would then perversely and rather ironically discourage the victims of government abuse from exercising their rights to petition in court. *See San Ramon Valley Fire Prot. Dist.*, 125 Cal. App. 4th at 358. The protected activity itself must accordingly "form the basis for liability" under the elements that make up each legal claim. *Park*, 2 Cal. 5th at 1063.

Thompson and Pereida do not cite any legal elements or discuss any theories of liability to show why a particular claim is based on their early reassurances to Kessler and his companies. Nelson similarly omits any discussion of elements or specific claims from his own arguments. These three defendants argue only generally that the claims against them are based on the plaintiffs' frustrations with the permitting process. (*See* Docs. 15 at 15–18; 37 at 7–9.) It is their

burden as the moving parties to show that protected activities form the basis of the plaintiffs' claims. *Park*, 2 Cal. 5th at 1062–63; *Baral*, 1 Cal. 5th at 396. The Court will not relieve them of that burden. Doing so would unfairly deprive the plaintiffs of an opportunity to respond, and it would lead to unnecessary delays: as discussed above, the complaint includes more than two dozen claims, ranging from defamation and fraud to breach of contract and public corruption.

By contrast, Hayes and VVH do explain why, in their view, several of the claims against them are based on their recommendations to the planning commission. (*See* Doc. 14 at 12–15.) The Court takes these claims in turn.

**1. Defamation.** Hayes and VVH argue first that the plaintiffs' defamation claims (the first two) are based on their recommendations to the planning commission. (*See id.* at 13.) By definition, a plaintiff who asserts a claim for defamation is contending that the defendant has harmed him by making a false assertion of some fact. *See Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003); *see also* Cal. Civ. Code §§ 45, 46 (referring to "false" written and oral communications, respectively). The complaint does not refer to any false statements within the recommendations that Hayes and VVH submitted. It refers instead to other statements to illustrate the defamation claims' reach. (*See* Doc. 1 at 48–49.) Hayes and VVH do not explain for their part what statements within their recommendations might have been false under the plaintiffs' theory of the case. For that reason, they have not demonstrated that the plaintiff's defamation claims are based on a protected activity.

**2. Business Interference.** Hayes and VVH next argue that the plaintiffs' third, fourth, fifth, and twenty-third claims are based on their recommendations to the planning commission. (Doc. 14 at 13.) In these claims, the plaintiffs allege that all of the defendants interfered with the plaintiffs' real estate and construction business in various illegal ways. (*See* Doc. 1 at 52–55, 75–77.) The plaintiffs cite the economic relationships they had with real estate and development clients (*see id.* at 52–55), the contracts they had signed with people who wanted to advertise on the billboard (*see id.* at 76), and an unrelated development contract they had made with a third-party property owner, i.e., the Merced Union High School District (*see id.* at 55, 76–77).

A common thread runs through all of these claims. In each, the plaintiffs would need to

establish that the defendants either negligently or intentionally undertook some action to induce a breach of the contract or to disrupt a relationship. *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (intentional interference with contractual relationships); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (intentional interference with prospective economic advantage); *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078 (2007) (negligent interference with prospective economic advantage). To be based on Hayes's and VVH's protected activity, then, these claims would need to target the billboard project rather than some other project or event.

Starting with claim three (for intentional interference with non-contractual relationships), the plaintiffs refer expressly to the "unnecessary conditions" that the defendants imposed in connection with the billboard project, and they incorporate their allegations about Hayes and VVH. (*See* Doc. 1 at 52–53.) They also incorporate these allegations into their fourth claim, which is similar, but based on the alternative allegation that the defendants acted negligently, rather than intentionally. (*See id.* at 53–55.) The plaintiffs refer to the allegedly "excessive" billboard conditions in claim twenty-three as well, which relates in part to the advertising contracts the plaintiffs had with people who wanted to buy spots on the billboard. (*See id.* at 76.) Hayes and VVH have thus demonstrated that claims three, four, and twenty-three are based on protected activity.

By contrast, claim five relates only to the plaintiffs' contract with the Merced Union High School District. (*See id.* at 55–56.) The plaintiffs do not allege that Hayes or VVH made recommendations in connection with this project. The recommendations they cite relate solely to the billboard project. (*See id.* at 46.) Hayes and VVH have not shown that claim five is based on protected activity.

**3. Contract.** In claim nine, the plaintiffs allege that the defendants breached their implied covenant of good faith and fair dealing in connection with the lease agreement with the city, i.e., the agreement to build and maintain the billboard on the city's land and to share the advertising revenue. (Doc. 1 at 60.) The elements of this claim include, among others, a contracting party's unfair interference with the plaintiff's right to receive the benefits of the contract. *See, e.g.*, *Guz*

*v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000) ("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made."); J. Council Cal. Civ. Jury Instr. No. 325 (Feb. 2026) (listing elements).

Hayes and VVH do not explain how a claim for breach of the implied covenant of good faith and fair dealing could be based on actions by someone who was not a party to the contract in question. The Court need not decide at this point whether it could; that is not the point. "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected, not whether it has shown its acts are ultimately lawful." *Wilson*, 7 Cal. 5th at 888 (citations omitted). Hayes and VVH have not explained why or how the claim about the city's implied covenant of good faith and fair dealing is based on their activity. That is their burden. They have not carried it, so they have not demonstrated that claim nine is based on protected activity.

**4. Bane Act.** Hayes and VVH next argue that the plaintiffs' claim under the Tom Bane Civil Rights Act (section 52.1 of the Civil Code) is based on their recommendations to the planning commission. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *A.B. v. County of San Diego*, 112 Cal. App. 5th 404, 416 (2025) (quoting *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007)). And so, to prevail on a Bane Act claim here, the plaintiffs must ultimately prove that the defendants intentionally interfered (or attempted to interfere) with their legal rights and that the interference (or attempted interference) was by "threats, intimidation, or coercion." *Id.* (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)).

The plaintiffs allege that Hayes and VVH "used coercion to persuade [them] to sell the digital sign project, pursuant to the dictates of Thompson," such as by forcing them "to perform additional work" and make "modifications" that were "unnecessary" and "costly." (Doc. 1 at 62–63.) They incorporate their allegations about Hayes's and VVH's recommendations. (*See id.* at

62.) The tenth claim is therefore also based on protected activity.

**5. Emotional Distress.** Hayes and VVH argue the plaintiffs' eleventh claim for intentional infliction of emotional distress is also based on their recommendations. This claim has three elements: (1) the defendant acted extremely and outrageously "with the intention of causing, or reckless disregard of the probability of causing, emotional distress"; (2) the plaintiffs suffered "severe or extreme emotional distress"; and (3) the defendant's outrageous conduct was the actual and proximate cause. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).

The plaintiffs allege that the defendants acted outrageously by first encouraging them to spend money on the billboard project, then by deliberately interfering with and delaying the project. (Doc. 1 at 64.) They allege the delays contributed to the emotional distress that they suffered, and they incorporate their allegations about Hayes's and VVH's recommendations. (*Id.*) This claim is therefore also based on protected activity.

**6. California Constitution.** Hayes and VVH next argue the plaintiffs' twelfth, thirteenth, fourteenth, and twenty-eighth claims are also based on their protected activity. The plaintiffs allege in these claims that the defendants deprived them of various rights under the state constitution, such as equal protection and property, all without due process. (Doc. 1 at 65–66, 80.) They incorporate all of their previous allegations, and they allege they had "a protected property interest in the approval of their projects," but they do not elaborate. (*Id.* at 66.) Hayes and VVH hypothesize that the plaintiffs must mean to say that they ran afoul of the state constitution by "recommending that the planning commission impose certain conditions." (Doc. 14 at 14.) That is speculation, but more fundamentally, it reasserts the very conclusion that Hayes and VVH must establish. They have not demonstrated that these claims are based on protected activity.

**7. Legal and Mandatory Duties.** Hayes and VVH next turn to claims fifteen and sixteen. Claim fifteen is a common law negligence claim. (Doc. 1 at 66–67.) The sixteenth claim is a similar claim for failure to perform a duty, albeit a statutory duty rather than a duty imposed by common law, under section 815.6 of the state's Government Code. Both claims therefore rest in

part on the theory that the defendants breached a common law or statutory duty. *See Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016) (listing the elements of a common law negligence claim); Cal. Gov't Code § 815.6 ("Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.").

The plaintiffs do not refer to Hayes's or VVH's recommendations in these claims. They allege simply that the defendants had a duty to approve the billboard project without regard for their personal biases, interests, or animosity. (*See* Doc. 1 at 66–68). Because it is unclear what role Hayes or VVH's recommendations might play in connection with these claims, if any at all, they have not carried their burden to show that it is based on a protected activity. In addition, as noted above, the anti-SLAPP statute "does not protect a governmental entity's decisions to issue or deny permits." *Shahbazian*, 17 Cal. App. 5th at 826. "Acts of governance mandated by law, without more, are not exercises of free speech or petition." *San Ramon Valley Fire Prot. Dist.*, 125 Cal. App. 4th at 354.

**8. Breach of Public Trust.** Hayes and VVH argue claim seventeen is based on their recommendations to the planning commission as well. The plaintiffs allege in this claim that the defendants abused their authority or acted without authority by (1) initially approving the billboard design and encouraging them to move forward, then (2) changing course and attempting instead to convince them to abandon the project or sell their interests, (3) retaliating against the plaintiffs by informing them that they would need to go before the planning commission, and finally (4) ensuring that the planning commission vote would be deadlocked. (Doc. 1 at 68–70.) The plaintiffs also allege in this claim that the defendants interfered with the "railroad project," ostensibly in further retaliation for the plaintiffs' refusal to abandon the billboard project and to sell their interests. (*See id.* at 69.) They do not allege in this claim, however, that Hayes of VVH breached the public trust by recommending any particular conditions. Hayes and VVH have not identified any protected activities related to the railroad project. Nor have they explained how their actions have any connection to the legal elements or theory behind this claim, or even what

those elements and theory might be. They have not demonstrated that claim seventeen is based on protected activity.

**8. Extortion.** Hayes and VVH argue claim twenty-one is also based on protected activity. The plaintiffs gave this claim the title "Extortion." (Doc. 1 at 73–74.) A person can be prosecuted criminally for extortion and threats, *see* Cal. Pen. Code §§ 518–27, but California appellate courts have not held in any published opinions that private plaintiffs can pursue civil claims for damages under these criminal statutes, and federal district courts have broadly refused to entertain civil claims along these lines. *See, e.g.*, *Talkdesk, Inc. v. Pham*, No. 22-05961, 2024 WL 4866690, at *7 (C.D. Cal. Aug. 9, 2024), *as amended on denial of reconsideration*, 2025 WL 873010 (C.D. Cal. Jan. 13, 2025), *and aff'd*, No. 25-948, 2026 WL 2057425 (9th Cir. July 16, 2026); *but see Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1136 (C.D. Cal. 2009). California appellate courts have held, however, that there is a "general 'right to be free from acts constituting duress,'" and they have recognized a "'cause of action for wrongful acts in the nature of duress,'" including "threats to business or property interests." *CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 645 (1998) (quoting *Leeper v. Beltrami*, 53 Cal. 2d 195, 202, 203–05 (1959)). The Court interprets claim twenty-one as requesting relief along these lines.

The plaintiffs allege that soon after they refused Thompson's request to abandon the billboard project and sell their interest, he "and the other Defendants began to hinder, delay, and prevent plaintiffs' projects." (Doc. 1 at 73.) They allege that their refusal to abandon and sell the project results in the beginning of substantial delays" in all of their projects, "resulting in substantial economic harm and appeals." (*Id.* at 74.) They incorporate their allegation about Hayes's and VVH's recommendations to the planning commission. (*Id.* at 73.) This claim is therefore also based on that protected activity.

**9. Conspiracy.** Finally, Hayes and VVH argue claims nineteen and twenty are based on their protected activity. These claims are, respectively, for conspiracy to violate official duties and conspiracy to defraud. (Doc. 1 at 71–73.) The elements of a civil conspiracy claim are (1) that the defendants formed and operated a conspiracy, (2) that the conspiracy caused damages to the plaintiff, and (3) that the damages were caused by a wrongful act in furtherance of a

"common design." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006).

The plaintiffs allege that the defendants conspired to force them to abandon and sell the billboard project, to delay the railroad project, and to sully their good reputations. (Doc. 1 at 71–73.) They allege specifically that the defendants "penalized" them by imposing "a multitude and excessive conditions." (*Id.* at 72.) They also incorporate their allegations about Hayes's and VVH's recommendations. Hayes and VVH have accordingly demonstrated that claims nineteen and twenty are based on protected activity.

In sum, Hayes and VVH have demonstrated that claims 3, 4, 10, 11, 19, 20, 21, and 23 are based on their protected activity, i.e., their proposal of certain conditions for the billboard project to the planning commission. It is accordingly the plaintiffs' burden to demonstrate that these claims have "sufficient merit."

The other defendants have not demonstrated that any of the claims against them are based on protected activity. Their motion to strike is therefore denied.

**MERITS AND MOTIONS TO DISMISS**

To briefly reiterate the legal standard summarized above: in a federal district court, if a special motion to strike is based on arguments about faults in the complaint and the plaintiffs' allegations, and if the defendant shows that at one or more of the plaintiff's claims are based on protected conduct, then the merits question at the second step is whether the complaint states a claim under the terms of Federal Rule of Civil Procedure 12(b)(6). *Planned Parenthood*, 890 F.3d at 834. A Rule 12(b)(6) motion tests a complaint's "legal sufficiency," *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), that is, whether it is based on "a cognizable legal theory" and includes "sufficient facts" to support that theory, *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The district court's task is to decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The defendants make the same arguments in support of their Rule 12 motions as they do in support of their special motions to strike under section 425.16(b). The Court will accordingly take these arguments together, beginning with their overarching contentions, which apply broadly

to many of the claims at once. The first is based on the statute of limitations.

**I. Statute of Limitations**

The defendants contend that the plaintiffs' claims are all subject to the 90-day statute of limitations in section 65009 of the state's Government Code, and they argue that the plaintiffs did not file this case within that ninety-day period.

Section 65009 is part of a collection of laws that regulate planning, zoning, and land use. *See Travis v. County of Santa Cruz*, 33 Cal. 4th 757, 765 (2004). It creates a "short" 90-day statute of limitations for "actions challenging several types of local planning and zoning decisions: the adoption of a general or specific plan; the adoption of a zoning ordinance; the adoption of a regulation attached to a specific plan; the adoption of a development agreement; and the grant, denial, or imposition of conditions on a variance or permit." *Id.* at 765–66 (citing Cal. Gov't Code § 65009(c)(1)(A)–(E)). It was "intended 'to provide certainty for property owners and local governments regarding decisions made pursuant to this division' and thus to alleviate the 'chilling effect on the confidence with which property owners and local governments can proceed with projects' created by potential legal challenges to local planning and zoning decisions." *Id.* (quoting Cal. Gov't Code § 65009(a)(2) and (3)).

California appellate courts have held that the 90-day statute of limitations extends to "a broad variety of challenges to land use decisions." *AIDS Healthcare Found. v. City of Los Angeles*, 86 Cal. App. 5th 322, 335 (2022) (citing *Ching v. S.F. Bd. Permit Appeals*, 60 Cal. App. 4th 888, 891 (1998)); *see also, e.g.*, *Save Lafayette Trees v. City of Lafayette*, 32 Cal. App. 5th 148 (2019) (holding 90-day limit applied to claims about tree removal under planning and zoning law but not to environmental claim); *Citizens for Beach Rts. v. City of San Diego*, 17 Cal. App. 5th 230 (2017) (holding 90-day limit applied to claims about lifeguard station); *County of Sonoma v. Superior Court*, 190 Cal. App. 4th 1312 (2010) (holding 90-day limit applied to claims about an ordinance governing the zoning of cannabis dispensaries). In *AIDS Healthcare Foundation*, for example, the Court of Appeal held that the 90-day limit applied to corruption and bribery claims under the state's Political Reform Act. *See* 86 Cal. App. 5th at 327. The "gravamen" of the complaint in that case was "an attack on, or review of, the [municipal]

committee's decisions related to permitting and real estate project approvals." *Id.* at 338. The plaintiffs in this case are therefore incorrect to contend that section 65009 does not apply to allegations of public corruption. They are similarly mistaken to argue that section 65009 is limited to claims about residential zoning or housing.

The defendants have demonstrated that some of the plaintiffs' claims are subject to the 90-day statute of limitations in section 65009. Although these claims come from many directions, they share as common ground the contention that permitting conditions were unnecessary, discriminatory, illegal, or otherwise improper:

- Claims 12, 13, and 14 are based on the theory that the permitting conditions were violated the California Constitution.
- Claim 26 is a federal claim under 42 U.S.C. § 1983 and the federal Constitution. Claim 28 appears to be based on § 1983 and the federal Constitution as well. Although these are federal claims, they are based on the same theory as the state constitutional claims, so the same state-law statute of limitations would apply. *See Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019) ("[C]laims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits.").
- Claims 15, 16, 24 and 25 are based on the theory that the defendants imposed the conditions in violation of their common law and statutory duties.
- Claims 17, 18, and 19 are based on the theory that the defendants imposed the conditions corruptly, as part of a conflict of interest, or in furtherance of a related conspiracy.
- Claim 23 is based on the theory that the defendants imposed the conditions as part of an effort to interfere with a contract.

Section 65009 applies to claims that, like these, take aim at "the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." Cal. Gov't Code § 65009(c)(1)(E). It also provides that actions "[c]oncerning any of the proceedings, acts, or determinations taken, done, or made prior to any" such decision are covered

by the same statute of limitations. *Id.* § 65009(c)(1)(F).

By the plaintiffs' allegation, the defendants imposed the disputed conditions in 2022 or earlier. This was more than 90 days before they filed this case in 2024, so it is clear on the face of the complaint that the claims above (12–19, 23, 25, 26, and 28) were filed after the statute of limitations had expired.

The plaintiffs' contrary argument invokes the "continuing violation doctrine." (*See, e.g.*, Doc. 28 at 17–18.) This doctrine "aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). It cannot help a plaintiff whose complaint does not lay out "a series of discrete, independently actional alleged wrongs" and that does not explain how a "wrongful course of conduct became apparent only through the accumulation of a series of harms." *Id.* at 1198. The plaintiffs' complaint in this case does not describe an ongoing problem that began before the limitations period expired. It does not include allegations that could show that this case is about a series of independently actionable wrongs. There is no allegation to show why the defendants' allegedly wrongful course of conduct only became apparent much later. The plaintiffs therefore cannot rely on the continuing violation doctrine.

The plaintiffs also argue their claims were filed before the statute of limitations expired because they "did not and could not have discovered the full extent of the harm—including Defendants' fraudulent acts and defamatory statements—until certain key events and disclosures occurred." (*See, e.g.*, Doc. 28 at 18.). They argue similarly that the defendants should be estopped from asserted a defense based on the statute of limitations as an equitable matter, because the defendants' own fraudulent conduct prevented the plaintiffs from filing this lawsuit sooner. (*See, e.g.*, *id.* at 18–19.) These arguments are not persuasive. The plaintiffs do not explain what information they were delayed in discovering or learning, and they do not cite any relevant allegations in their complaint.

With all this said, some of the allegations that support the claims listed above are not actually related to the conditions the defendants imposed on the billboard project. Most

importantly, the plaintiffs allege that the defendants have imposed unreasonable conditions or acted unlawfully in connection with the railroad project. (*See, e.g.*, Doc. 1 at 49, 69, 70, 72.) The defendants have not cited any allegations or portions of the public record that could show these other causes of action accrued more than 90 days before this case was originally filed. It is not obvious, in other words, on the face of the complaint, that the claims listed above are wholly barred by the statute of limitations; at most they are partially barred. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). To complicate matters further, the complaint does not always explain whether and how much each claim is based on allegations about the railroad project, the billboard project, or another project or problem. To ensure this case moves forward solely on the basis of the claims that were at least potentially filed within the relevant statute of limitations, the Court will dismiss claims 12–19, 23, 25, 26, and 28 with limited leave to amend.

More specifically, now that the case has been removed and is pending in this court, the plaintiffs are subject to the requirements of Federal Rule of Civil Procedure 8. That rule demands a "short and plain statement" of each claim "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To prevent a potential amendment from becoming an exercise in futility, the plaintiffs must therefore support any amended versions of claims 12–19, 23, 25, 26, and 28 with short and plain allegations showing that each claim is not an attack on the conditions that the defendants imposed in connection with the billboard project or its approval. Alternatively (or in addition), the plaintiffs may include factual allegations related to the billboard project that plausibly support a theory of later accrual based on equitable estoppel, the continuing violations doctrine, or the delayed discovery rule.

**II. Administrative Remedies and Claims Presentation**

Beyond the statute of limitations, the defendants also argue that all of the plaintiffs' claims are barred because they did not fully pursue the administrative remedies that were available to them before they filed their lawsuit. (Docs. 14 at 20–21; 15 at 20–21.) This argument does not apply to the plaintiffs' federal claims under § 1983. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("Generally, 'exhaustion is not a prerequisite to an action under § 1983.'"

(quoting *Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982))). But as for the plaintiffs' many state law claims, the defendants recognize that the plaintiffs pursued a successful appeal before the city council. (*See id.*) That was an administrative remedy. The defendants seem to contend that the plaintiffs could and should have raised all of their current claims and theories of wrongdoing in the course of that appeal. (*See, e.g.*, Doc. 15 at 21 (faulting Kessler for failing to mention his current allegations or raise claims in his written appeal or at the city council hearing).)

The defendants have not explained what power the city council had to hear the various constitutional, defamation, negligence, extortion, corruption, and other claims that the plaintiffs now assert. Nor do the defendants explain what relief the city council or any other administrative body could have granted to the plaintiffs. They have not demonstrated that the plaintiffs could and should have pursued a particular form of administrative relief before they filed this lawsuit but did not. *See, e.g.*, *Howard v. County of San Diego*, 184 Cal. App. 4th 1422, 1430 (2010) ("The failure to pursue administrative remedies does not bar judicial relief where the administrative remedy is inadequate or unavailable, or where it would be futile to pursue the remedy.").

Relatedly, the defendants contend that the plaintiffs' pre-suit claim presentation forms—i.e., the notices required by the state's Government Claims Act—did not identify the liabilities and the allegations that the plaintiffs later raised in this lawsuit. (*See* Docs. 14 at 19–20; 15 at 21–22.) Again, this argument does not apply to the federal claims. *See, e.g.*, *Williams v. Horvath*, 16 Cal. 3d 834, 841 (1976). As for the state law claims, the plaintiffs disagree, for a variety of reasons. (*See, e.g.*, Doc. 28-3 at 21–23.) A few details about the claim presentation requirements are necessary to explain this dispute.

The Government Code generally obligates a prospective plaintiff to present "all claims for money or damages against local public entities," such as a city and its political subdivisions, to the prospective defendant before filing a lawsuit. *See* Cal. Gov't Code §§ 900.4, 905, 945.4. This pre-suit claim must include the claimant's name and address; "the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted"; a "general description" of the "injury, damage or loss incurred"; the names of any public employees who

caused the injury, damage, or loss; and for claims less than $10,000, the amount at issue. *Id.* § 910.

The failure to present a pre-suit claim to the public entity "bars a plaintiff from filing a lawsuit against that entity." *State of California v. Superior Court*, 32 Cal. 4th 1234, 1239 (2004). A plaintiff must therefore "allege facts demonstrating or excusing compliance with the claims presentation requirement" in his complaint. *Id.* The omission of these allegations subjects the case to a general demurrer in state court and a dismissal in federal court. *See Weigelt v. County of Monterey*, No. 19-02687, 2019 WL 11542364, at *4 (N.D. Cal. Aug. 30, 2019), *aff'd*, 821 F. App'x 839 (9th Cir. 2020); *State of California*, 32 Cal. 4th at 1239.

The purpose of these claim presentation requirements "is not to prevent surprise," but rather to give the public entity a chance to investigate the claims and "settle them, if appropriate, without the expense of litigation." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007) (quoting *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974)). The claims statutes also give the public entity a chance to plan "for potential liabilities and to avoid similar liabilities in the future." *Id.* (quoting *Baines Pickwick Ltd. v. City of Los Angeles*, 72 Cal. App. 4th 298, 303 (1999)).

Given these purposes, California appellate courts have often reiterated that prospective plaintiffs must comply with the claims statutes even if the public entity already knows about "the circumstances surrounding the claim." *Id.* (quoting *City of San Jose*, 12 Cal. 3d at 455). By the same token, however, courts have emphasized that it is unnecessary for a prospective plaintiff to include the sort of "detail and specificity" that would eventually be required in a judicial complaint. *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004). It is enough to "fairly describe what the entity is alleged to have done." *Id.* (alterations omitted) (quoting *Shoemaker v. Myers*, 2 Cal. App. 4th 1407, 1426 (1992)).

This is a relatively loose requirement in practice. As the state's courts have put it, the idea is to prevent a plaintiff from relying on an "entirely different set of facts" in the lawsuit and from "completely" shifting his theory of the defendant's liability. *Id.* (citation and quotation marks omitted). In one recent case, for example, a man filed a pre-suit claim that identified an "uplifted

sidewalk" as the cause of a fall that resulted in severe injuries to his knees, hands, and back. *Hernandez v. City of Stockton*, 90 Cal. App. 5th at 1226–27 (2023). The defendant, a city government, rejected his pre-suit claim after its inspector found no uplifted section of sidewalk near the place where he fell. *See id.* at 1228. In the ensuing litigation, the man testified that he had actually fallen into a hole. *See id.* The trial court granted the city's motion for summary judgment, and the Court of Appeal affirmed. *See id.* at 1232. The difference between an uplifted section of sidewalk and a hole in the ground "is the type of factual variance that is fatal to a civil action . . . , since it amounts to a complete shift in allegations." *Id.*

Hayes and VVH contend briefly that the plaintiffs' pre-suit claims fall short of what the Government Claims Act requires because they did not "contain any factual allegations against any defendant." (Doc. 14 at 20.) But rather puzzlingly, the exhibits that Hayes and VVH offer in their request for judicial notice—exhibits that, according to the defendants, are copies of the relevant pre-suit claims—refer to attachments and include dozens of pages of details about the plaintiffs' claims. (*See* Doc. 15 at 1–74.) The Court cannot say that the plaintiffs' pre-suit notices describe an "entirely different set of facts" or that this lawsuit amounts to a complete shift in theories. *Stockett*, 34 Cal. 4th at 447 (citation omitted).

California courts have also been willing to excuse defects in a pre-suit claim under the doctrine of "substantial compliance." *Simms v. Bear Valley Cmty. Healthcare Dist.*, 80 Cal. App. 5th 391, 400 (2022). Under this doctrine, "a claim is valid if it substantially complies with all of the statutory requirements for a valid claim even though it is technically deficient in one or more particulars." *Olson v. Manhattan Beach Unified Sch. Dist.*, 17 Cal. App. 5th 1052, 1060 (2017) (quoting *Santee v. Santa Clara County Off. of Educ.* 220 Cal.App.3d 702, 713 (1990)). With that said, there is an "important distinction" between a claim that is "inadequate" and "a document that is not a claim at all." *Simms*, 80 Cal. App. 5th at 400. In *Olson*, for example, the plaintiff could not rely on the substantial compliance doctrine because the "claim" in question did not really give notice of the claims at all: it did not include the plaintiff's address, the names of any responsible employees, or how much money he was seeking, and it described a different theory of wrongdoing than the one he eventually pursued on in his lawsuit. *See id.* at 1061.

In addition to these judicially created rules, there is a statutory process for pre-suit claims that fall short: if a claim "as presented fails to comply substantially" with the statutory requirements summarized above, the law permits the recipient to "give written notice of its insufficiency, stating with particularity the defects or omissions therein." Cal. Gov't Code § 910.8. Although the recipient entity has no obligation to give this notice, the "failure to give notice of insufficiency" has consequences. *Id.* ¶ 911. It is treated as a waiver of "[a]ny defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented." *Id.*; *see also Simms*, 80 Cal. App. 5th at 400–07 (summarizing and applying these sections); *Olson*, 17 Cal. App. 5th at 1061–62 (same). For that reason, courts have sometimes described a defective "claim as presented" as a "trigger-claim," since it "triggers a duty by the public entity to notify the potential claimant of the claim's insufficiency." *Simms*, 80 Cal. App. 5th at 401 (quoting *Green v. State Ctr. Cmty. Coll. Dist.*, 34 Cal. App. 4th 1348, 1354 (1995)). A document qualifies as a "claim as presented" or "trigger claim" if it "discloses the existence of a claim, which, if not satisfactorily resolved, will result in a lawsuit against the entity." *Olson*, 17 Cal. App. 5th at 1062 (quoting *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 709 (1989)).

The plaintiffs in this case allege that they complied with the Government Claims Act by presenting claims to the city in February and September 2024. (Doc. 1 at 42.) They also allege that the city denied these claims without identifying any defects, and they allege that the parties "met and conferred in an attempt to resolve the issues set forth" in their first amended complaint. (*Id.* at 42–43.) As noted, the defendants have filed copies of both pre-suit claims forms, including several pages of attachments. (*See* Doc. 16 at 9–73.) The Court will take judicial notice of their contents, which is not subject to any reasonable dispute. *See* Fed. R. Civ. 201(b). The defendants concede that they did not give notice of any defects in these documents under section 910.8. (*See* Doc. 37 at 15.) They argue that the alleged "claims" were not "claims as presented"—and therefore did not "trigger" any duty to give notice of any defects—but in only a few limited respects.

First, the defendants correctly point out that the documents do not mention one of the three plaintiffs at all (AG-K Properties, LLC). The Court of Appeal confronted a similar problem

several years ago in *Nelson v. County of Los Angeles*, 113 Cal. App. 4th 783 (2003). The plaintiffs alleged that Los Angeles County and its sheriff's deputies were liable for the wrongful death of their son. *See id.* at 787. One of the plaintiffs, the man's mother, also pursued several tort claims on his behalf as survival causes of action. *See id.* at 796. The Court of Appeal affirmed the trial court's summary adjudication of these claims based on the Government Claims Act. *See id.* at 796–97. The mother's pre-suit claim was filed only on her own behalf, not on behalf of her son or his estate, and she had requested damages only for "the loss of a son," not for the injuries that he had sustained before his death. *See id.* at 797. The Court of Appeal also agreed with the County that it was not possible to notify her of this omission. *See id.* at 797–98. She had presented no claim by her son, so there was nothing to excuse as "defective." *See id.*

This reasoning shows that AG-K Properties did not present a claim to the City under the Government Claims Act and that it cannot join Kessler and BK Industries as plaintiffs in this case. The plaintiffs resist this conclusion based on their assertion that Kessler wholly owns AG-K Properties. (Doc. 28-3 at 22.) They did not include allegations along these lines in their complaint, however, and they have offered no evidence or citations of the public record to demonstrate Kessler's ownership. Nor do the plaintiffs cite any authority to support the implicit assumption behind their argument, i.e., that a limited liability company and its "owner" (ostensibly its sole member) are treated as a single entity for purposes of the state's claim presentation statute. The Court is aware of no such authority. The motions to dismiss AG-K's state law claims are granted without leave to amend, given the futility of an amendment.

Second, the defendants argue similarly that the plaintiffs' pre-suit claims forms fell short because they did not mention the city's building department, one of the defendants the plaintiffs later named in their lawsuit. (*See* Doc. 15 at 22.) The plaintiffs concede that their pre-suit claims did not identify the city building department specifically. (*See* Doc. 28-3 at 22.) They argue that this omission was harmless or insubstantial because the claims forms identified the city itself, along with the city employees who worked for the building department at the time. (*See id.*) The defendants do not explain how the omission resulted in any confusion or how it might have frustrated the purposes of the Government Claims Act's presentation requirements. The "claims

statutes should not be applied to snare the unwary where their purpose has been satisfied." *Simms*, 80 Cal. App. 5th at 401 (alterations omitted) (quoting *Stockett*, 34 Cal. 4th at 446). The Court will not dismiss or strike the allegations against the building department simply because it was omitted from the pre-suit notice. The notices substantially complied with the terms of the statute.

The defendants also argue (and the plaintiffs also concede) that their claims form itself did not specifically identify Hayes. (*See* Doc. 28-3 at 22.) As the plaintiffs point out, however, they did refer to him and his company, VVH, in the letters their attorney sent alongside those forms, and the City's records included those letters in the paperwork that it presents as the "claims on file." (Doc. 15 at 2, 29–30, 52–53.) If nothing else, these letters qualified as "claims presented," given the clear warnings within them that the plaintiffs intended to pursue litigation if the city did not respond. *See Simms*, 80 Cal. App. 5th at 402–03 (finding a similar letter was a claim). The Court will not dismiss the claims against Hayes based on the requirements of the Government Claims Act.

Finally, the defendants argue the pre-suit claims fall short because they did not mention Rhyolite Development & Construction, Inc., one of the defendants they later sued. The plaintiffs allege in their complaint that Rhyolite is a private corporation. (*See* Doc. 1 at 41.) The defendants have not cited any provisions within the Government Code that might define an entity like Rhyolite as a "public entity" or "employee" for purposes of the Government Claims Act, and the Court is aware of none. The defendants have not demonstrated that the plaintiffs had any obligation to present a claim against Rhyolite or to identify Rhyolite in their pre-suit claim.

**III. State Law Immunities**

The defendants next invoke several state law immunities. Federal constitutional claims are not subject to state-law immunities, so the motions to dismiss or strike these claims could not be granted on the basis of any state law immunities. *See Martinez v. State of California*, 444 U.S. 277, 283–84 & n.8 (1980).

As for the plaintiffs' claims under state law, Nelson first argues that he is immune under section 820.9 of the Government Code. (*See* Doc. 15 at 22–23.) That section provides that

mayors and several other types of local officials "are not vicariously liable for injuries caused by the act or omission of the public entity or advisory body." Cal. Gov't Code § 820.9. But it states expressly that nothing about this immunity "exonerates an official from liability for injury caused by that individual's own wrongful conduct." *Id.* It is unclear how any specific claims or allegations would be barred by this section. Some of the plaintiffs' allegations against Nelson predate his time as mayor. Many of their allegations also concern his own actions rather than the actions of the city itself. The Court will not dismiss or strike any claims under section 820.9.

Next, the defendants cite section 821.6. (*See* Doc. 15 at 23.) The immunity established by this provision "was designed primarily to preserve the existing common law immunity for conduct that might otherwise support a malicious prosecution action." *Leon v. County of Riverside*, 14 Cal. 5th 910, 926 (2023). It provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. The plaintiffs are not pursuing any claims for malicious prosecution. The defendants do not explain which claims were allegedly caused by their instituting or prosecuting an administrative proceeding. It is unclear whether any of them are. Many are not, such as the defamation claims. The Court will not dismiss or strike any claims based on this immunity.

The defendants next cite section 825 of the Government Code. (*See* Doc. 15 at 23–24.) That section defines a public entity's obligation and authority to defend and indemnify its employees in connection with any actions and judgments against them. *See* Cal. Gov't Code § 825(a); *see also, e.g.*, *Deocampo v. Potts*, 836 F.3d 1134, 1141–42 (9th Cir. 2016); *Leon*, 14 Cal. 5th at 928; *Johnson v. State*, 69 Cal. 2d 782, 790–93 (1968). It is unclear why the defendants believe these provisions immunize them or relieve them of any potential liability. The Court will not dismiss or strike any claims under section 825.

Defendant Thompson also cites section 820.2 of the Government Code. (*See* Doc. 15 at 24.) Under that section, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused," except as provided by statute. Cal. Gov't Code

§ 820.2. Thompson contends incorrectly that the claims against him are based solely on his discretionary decision to approve the billboard project and the plaintiffs' plans. (Doc. 15 at 24.) As summarized at the outset of this order, the plaintiffs allege (among other things) that Thompson attempted to steer the project to a third party for his own personal benefit, then slow-walked the approval process, erected unreasonable barriers, discriminated against the plaintiffs, and finally lied about them to their current and potential customers after they refused.

Hayes and VVH (but not the other defendants) argue the conspiracy claims in particular are barred by the "agent's immunity rule." (Doc. 12 at 25–26.) Under this rule, "duly acting agents and employees cannot be held liable for conspiring with their own principals." *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1605 (2009) (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 (1994)). Although the plaintiffs allege Hayes is a city employee, and although the city is among the alleged conspirators, the other defendants were also part of the alleged conspiracy, and they were not Hayes's or VVH's employers or principals. With only the complaint to consult, Hayes and VVH cannot show that the agent's immunity rule bars the conspiracy claims against them.

Finally, the defendants argue that they are immune under section 47 of the state's Civil Code. They cite subdivision (a), which provides that a "publication or broadcast" is "privileged" if it is made "[i]n the proper discharge of an official duty." Cal. Civ. Code § 47(a). In the defendants' words, they are immune because all of the plaintiffs' claims "arise out of the processing and appeal of City officials' decisions as to approvals, votes on, or denials of a project in their official capacities." (Doc. 15 at 25.)

This argument takes subdivision 47(a) too far. Section 47(a) protects communicative conduct—publications and broadcasts—such as press releases, statements to the press, speeches, letters, and reports. *See, e.g.*, *Kilgore v. Younger*, 30 Cal. 3d 770, 779 (1982) (press conference and written report); *Saroyan v. Burkett*, 57 Cal. 2d 706, 707 (1962) (press release); *Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1075, 1088 (2008) (letter); *Tutor-Saliba Corp. v. Herrera*, 136 Cal. App. 4th 604, 611 (2006) (speech). The defendants do not cite cases in which a California court has decided that section 47(a) also protects officials from claims

about the underlying decisions themselves, such as their approvals and denials of permit applications. The Court is aware of none.

Hayes has a different theory. He contends that the claims against him are privileged under subdivision 47(a) because they arise out of the permit conditions that he recommended. (Doc. 14 at 23.) A recommendation could quite reasonably be described as a "publication" or "broadcast," given its communicative nature. Some of the claims against Hayes are based on the statements in these recommendations, but some are not. As explained in the separate section above:

- Claims 3 and 4—for interference with contract and economic advantage—are based in part on the theory that Hayes's recommendations were excessive and unnecessary. (Claim 23 is based on similar allegations, but it was filed after the statute of limitations expired, as explained above.)
- Claim 10 under the Bane Act is based in part on the plaintiffs' allegation that Hayes's recommendations forced them "to perform additional work" and make "modifications" that were "unnecessary" and "costly." (Doc. 1 at 62–63.)
- Claim 11, for intentional infliction of emotional distress, is based in part on the allegation that the defendants, including Hayes, outrageously delayed the project with unnecessary and excessive conditions.
- Claims 20 and 29, both civil conspiracy claims, are based in part on the allegation that Hayes and the other defendants "penalized" the plaintiffs by imposing "a multitude and excessive conditions." (Doc. 1 at 72.) (Claim 19 is based on similar allegations, but it was filed after the statute of limitations expired, as explained above.)
- Claim 21, which the Court interprets as a claim for duress, is based in part on the allegation that Hayes's recommendations were leverage in an allegedly extortive scheme.

But again, the remaining claims against Hayes (i.e., those that were not dismissed or stricken based on the statute of limitations) are not based on his recommendations, but on other conduct:

- The plaintiffs do not allege that Hayes made defamatory statements in his recommendations, so he is not immune to claims 1 or 2 under the official duties privilege.
- Claim 5 relates only to the plaintiffs' contract with the Merced Union High School District, and they do not allege that Hayes's recommendations were connected to this contract.
- It is unclear how a claim for breach of the implied covenant of good faith and fair dealing could be based on recommendations by someone who was not a party to the contract in question, so if Hayes faces any liability under claim 9, he could not rely on subdivision 47(a).
- The complaint does not connect Hayes's recommendations to the allegedly arbitrary and capricious or unlawful decisions that form the basis for the plaintiffs' request for a writ of mandate in claim 24. (*See* Doc. 1 at 77.)
- The fraud claims (6 and 7) and promissory estoppel claim (22) are not based on Hayes's recommendations, but rather on the theory that the defendants persuaded the plaintiffs to spend money by making deceptive promises or withholding information about the approval process and their good faith. (*See* Doc. 1 at 56–57, 74–75.)

Hayes has therefore demonstrated that he is immune to liability from claims 3, 4, 10, 11, 20, 21, and 29 under subsection 47(a), but only partially, i.e., inasmuch as those claims are based on the recommendations he made to the planning commission. Because no amendment could overcome this partial immunity, the Court will not permit the plaintiffs to assert amended versions of these claims against Hayes.

Hayes would be similarly immune, again only in part, to an amended version of claims 19 and 23, which were dismissed with leave to amend based on the statute of limitations, as explained above. For that reason, if the plaintiffs chose to amend claims 19 and 23 in an effort to explain why these claims were filed before the statute of limitations had expired, the amendment must be limited. It may not include claims based on Hayes's recommendations.

## IV. Federal Pleading Standards

The remainder of the defendants' arguments are specific to the merits of the individual claims. The Court will address these arguments only in connection with those claims that were not dismissed for the more general reasons above.

**1. Defamation.** The defendants argue correctly that claim one (for defamation) and claim two (for slander) are duplicative. Slander is a type of defamation. *See* Cal. Civ. Code §§ 44, 46); *see also Shively*, 31 Cal. 4th at 1242. Claim one is therefore dismissed as duplicative of claim two without leave to amend. The defendants argue the complaint falls short of pleading a plausible claim for slander because it attributes the defamatory statements to all of the defendants, because it alleges only on information and belief that the defendants made defamatory statements, and because it does not specify which false statements are the basis for their claim. (*See* Docs. 12 at 14; 15 at 25–26.)

The complaint is not as generic as the defendants portray it. It includes several paragraphs describing the types of statements at issue and explaining why they were false and harmful. (*See, e.g.*, Doc. 1 at 48–49.) The defendants are correct, however, that the complaint attributes several broad categories of slanderous assertions to all of them "on information and belief." (*See id.*) A plaintiffs cannot simply allege "on information and belief" that a defendant acted in a culpable way. That was the Supreme Court's holding in *Twombly* itself. *See* 550 U.S. at 551, 555–56. As with all of the inferences that a plaintiff relies on in resisting a Rule 12(b)(6) motion, "a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also, e.g.*, *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022). In the words of Rule 8, they must include a statement "showing" they are "entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint here does not include this type of factual information. The motion to strike or dismiss claims one and two are granted with leave to amend.

**2. Business and Contract Interference.** Claims 3 and 4 are for intentional and negligent interference with economic advantage, respectively. These claims have similar elements. *Compare, e.g., Korea Supply*, 29 Cal. 4th at 1153 (intentional interference) *with, e.g.*, *Venhaus*,

155 Cal. App. 4th at 1078 (negligent interference). Both are based on the allegation that the defendants interfered with their relationships with other clients and customers by making false claims about the quality of their work, permits, and professionalism. (*See* Doc. 1 at 52–55.) In this way, the interference claims build on the same generic allegations that support the plaintiffs' defamation claims. And so, for the same reasons as above, the economic interference claims fall short. The complaint includes no factual information about who said what to whom.

The plaintiffs' fifth claim is based on a distinct theory of contractual interference. The plaintiffs allege the defendants delayed their review of the railroad project with the Merced Union High School District. (*See* Doc. 1 at 55.) These delays, they allege, were designed to and actually did bring the plaintiffs into a breach of their contracts related to that project. (*See id.*) But again, the complaint does not include any factual information about these delays or what caused them. It offers little more than a recitation of elements.

Finally, claim 29 is a civil conspiracy claim based on the plaintiffs' brief allegation that the defendants "acted in furtherance of a common plan or design" when they interfered with their future economic and existing contractual relationships. (*See* Doc. 1 at 80.) To prove this claim, the plaintiffs would ultimately need to show that the defendants formed and operated a conspiracy and committed a "wrongful act" in furtherance of their common design. *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006). This claim is therefore built on the same inadequate foundation as claims three, four, and five.

The motions to dismiss and strike claims 3, 4, 5, and 29 are therefore granted with leave to amend.

**4. Fraud.** In claims six and seven, the plaintiffs allege the defendants persuaded them to spend time and money on the billboard project by misrepresenting their intentions: they promised to act in good faith, to cooperate, and to approve the project without delay, but never intended to keep that promise. (*See* Doc. 1 at 56–59.) In reality, they allege, the defendants intended for a third party to complete the project after they persuaded the plaintiffs to abandon it. (*See id.*) Claim 20 is a similar claim, but the plaintiffs allege in addition that the defendants conspired with one another to commit this fraud. (*See* Doc 1 at 72–73.)

In a federal district court, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Federal courts have interpreted this requirement as requiring allegations about "the who, what, when, where, and how" of the fraud in question. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). A complaint must also include allegations about the circumstances that show a statement was false or misleading at the time. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded in part on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). The plaintiffs have not offered this type of factual particularity to support their fraud claims. They do not allege who made what promises to whom, when, where, or how, and they do not explain what was misleading about each of misrepresentation and omission. The motions to dismiss or strike claims 6, 7, and 20 are granted with leave to amend.

**5. Contract.** Claim 8 is for breach of contract. The plaintiffs allege the city had an obligation under the lease agreement to act "honestly, without personal animus and bias" in issuing any necessary permits, approvals, and entitlements, but failed to fulfill that obligation. (Doc. 1 at 59.) In claim 9, the plaintiffs allege in the alternative that the defendants breached their implied covenant of good faith and fair dealing. (*See id.* at 60.)

The defendants first point out correctly that BK Industries and the city were the only contracting parties. (*See, e.g.*, Doc. 16 at 12.) For that reason, only BK could assert a claim for breach of this contract, and it could sue only the city. The city also argues that the contract does not waive compliance with the ordinary land use and other permitting requirements, and it argues that no provision within the contract imposes any obligations like those alleged in the complaint. The plaintiffs cite no contract provisions in their opposition. The Court's own preliminary review of the lease agreement's terms—which, again, are part of the public record—reveals no relevant terms. As noted at the beginning of this order, the agreement states, in effect, that the plaintiffs would need to comply with all of the ordinary rules and regulations. The motions to dismiss and strike claim eight are therefore granted with leave to amend, but only in part. Plaintiff BK Industries may assert a contract claim against the city in a further amended complaint, but to

avoid an exercise in futility, any amended contract claim must specifically identify the contract provision that the city allegedly breached.

Because BK Industries and the city are the only contracting parties, only the city could have breached any implied covenant of good faith and fair dealing, and only BK Industries could assert such a claim. *See, e.g.*, *Guz*, 24 Cal. 4th at 349. The motions to dismiss and strike claim 9 are therefore granted in part, i.e., to limit the claim to the contracting parties. The motions to dismiss and strike claim 9 are otherwise denied. The complaint is based on the plausible theory that the city wrongfully prevented BK Industries from obtaining the benefits of the lease agreement by delaying necessary approvals and imposing excessive and unreasonable conditions.

**6. Bane Act and Extortion.** The plaintiffs' tenth claim is based on the Bane Act. As summarized above, "[t]he essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *A.B.*, 112 Cal. App. 5th at 416 (2025) (quoting *Austin B.*, 149 Cal. App. 4th at 883). And so, to prevail on a Bane Act claim, a plaintiff must ultimately prove that the defendant intentionally interfered (or attempted to interfere) with a state or federal constitutional or legal right and that the interference (or attempted interference) was by "threats, intimidation, or coercion." *Id.* (quoting *Allen*, 234 Cal. App. 4th at 67). As explained above, the plaintiffs' "extortion" claim (number 21) is similar. California appellate courts have held that there is a "general 'right to be free from acts constituting duress,'" and they have recognized a "'cause of action for wrongful acts in the nature of duress,'" including "threats to business or property interests." *CrossTalk*, 65 Cal. App. 4th at 645 (quoting *Leeper*, 53 Cal. 2d at 202, 203–05).

As for Thompson, the motions to dismiss or strike these claims are denied. The complaint alleges with enough clarity and factual support that he attempted to coerce the plaintiffs to abandon the billboard project and to give up the benefits of their lease agreement. The plaintiffs allege that he threatened delays and hurdles in the approval process and spread false rumors about their competence and professionalism. By contrast, the plaintiffs do not support their generic

allegations of wrongful threats or interference against the other defendants with any factual information. The motions to dismiss and strike claims 10 and 21 are thus granted in part with leave to amend.

**7. Emotional Distress.** The plaintiffs' eleventh claim is for intentional infliction of emotional distress. BK Industries cannot bring a claim for emotional distress because it is not a natural person. *See Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1260 (2005) (citing *Tenants Ass'n of Park Santa Anita v. Southers*, 222 Cal. App. 3d 1293, 1304 (1990). Kessler cannot pursue a viable claim because his current allegations do not paint a picture of "outrageous" conduct causing "severe" emotional distress. *See, e.g.*, *Hughes*, 46 Cal. 4th at 1051 (describing the necessary conduct as "so extreme as to exceed all bounds of that usually tolerated in a civilized society" and the necessary emotional distress as "of such substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it" (citations, alterations, and quotation marks omitted)). The motions to dismiss or strike claim eleven are granted, with leave to amend in part as to Kessler only, given the futility of any claim by the two business entities.

**8. Promissory Estoppel.** Claim 22 is an equitable claim for promissory estoppel. (*See* Doc. 1 at 74.) "In California, under the doctrine of promissory estoppel, '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (quoting Restatements (Second) of Contracts § 90). To prevail in asserting a promissory estoppel claim, California courts normally require a plaintiff to prove (1) that the defendant made a clear and unambiguous promise, (2) that the plaintiff relied on the promise, (3) that reliance was reasonable and foreseeable, and (4) that the plaintiff was injured by relying on the promise. *See, e.g.*, *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 416–19 (2015) (explaining and applying elements).

The complaint includes reasonably specific allegations about promises by Thompson and Pereida, but not the other defendants. The plaintiffs allege Thompson and Pereida reassured them

that the necessary approvals would come quickly and that the process would be streamlined, they allege that they relied reasonably on these promises, given Thompson's and Pereida's positions within the city government, and they allege that the approval process actually took much longer, rendering several large expenditures useless or wasteful. The complaint does not include comparable allegations about the other defendants. The motions to dismiss and strike claim 22 are therefore granted in part and denied in part.

**9. Writ of Mandate.** In claim 24, the plaintiffs request a writ of mandate under section 1085 of the California Code of Civil Procedure. Some federal courts have held that section 1085 "authorizes only state courts to issue writs of mandate" and that they lack jurisdiction grant that type of relief. *Hill v. County of Sacramento*, 466 F. App'x 577, 579 (9th Cir. 2012) (unpublished). Most decline to exercise jurisdiction over requests for a writ of mandate. *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1184–85 (E.D. Cal. 2013). The result is the same in both scenarios: federal district courts generally do not hear requests to issue a writ of mandate. The motions to dismiss or strike Claim 24 are granted without leave to amend, but also without prejudice to adjudication in the state courts.

**10. Unconstitutional Retaliation.** Finally, the plaintiffs allege in claim 27 that the defendants retaliated against them in violation of 42 U.S.C. § 1983 and the First Amendment because they "reported the violations." (Doc. 1 at 79.) "To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). It is unclear what "protected activity" the plaintiffs will attempt to prove that they undertook. The motions to dismiss and strike are granted with respect to claim 27.

**CONCLUSION**

1. The special motion to strike (Doc. 15) by the City of Atwater, the City of Atwater Building Department, and defendants Thompson, Pereida, Ruiz, Nelson, and Lopez is **DENIED**.

2. The same defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) (also filed at Doc. 15) is **GRANTED IN PART** with leave to amend in part:

- Claim 1 is dismissed without leave to amend as duplicative of claim 2.
- The motion to dismiss claim 24 is granted without leave to amend, but also without prejudice to litigation in the state courts.
- All remaining state law claims by plaintiff AG-K Properties (i.e., the claims other than 26–28) are dismissed without leave to amend for failure to comply with the presentation requirements of the California Government Claims Act. Claims 26–28 by AG-K Properties are dismissed with leave to amend for failure to state a claim.
- As to plaintiffs Kessler and BK-Industries, Inc., the motion to dismiss claims 2–8, 11–20, 23, and 25–29 is granted with limited leave to amend, as detailed above, for failure to state a claim.
- As to plaintiff Kessler and the defendants other than the City of Atwater, the motion to dismiss claim 9 is granted without leave to amend for failure to state a claim. The motion to dismiss claim 9 is denied as to plaintiff BK-Industries, Inc. and the City of Atwater.
- The motion to dismiss claims 10 and 21 is denied with respect to the claims by plaintiffs Kessler and BK-Industries, Inc. against defendant Thompson. The motion to dismiss claims 10 and 21 is otherwise granted, with leave to amend.
- The motion to dismiss claim 22 by plaintiffs Kessler and BK-Industries, Inc. is denied with respect to defendants Thompson and Pereida and is otherwise granted, with leave to amend.

3. Defendants Hayes and VH Design Group, Inc., dba VVH Consulting Engineers, have demonstrated that claims 3, 4, 10, 11, 19, 20, 21, and 23 are based on their protected petitioning activity, i.e., the submission of recommendations to the City of Atwater Planning Commission. The plaintiffs have not demonstrated in response to this showing that any of the same claims have sufficient merit. Their special motion to strike (Doc. 13) is therefore

**GRANTED IN PART** as to claims 3, 4, 10, 11, 19, 20, 21, and 23.

4. The motion to dismiss for failure to state a claim by defendants Hayes and VH Design Group, Inc., dba VVH Consulting Engineers (Doc. 11) is **GRANTED IN PART** as follows:

- Claim 1 is dismissed without leave to amend as duplicative of claim 2.
- The motion to dismiss claim 24 is granted without leave to amend, but also without prejudice to litigation in the state courts.
- All remaining state law claims by plaintiff AG-K Properties (i.e., claims other than 26–28) are dismissed without leave to amend for failure to comply with the presentation requirements of the California Government Claims Act. Claims 26–28 by AG-K Properties are dismissed with leave to amend for failure to state a claim.
- As to plaintiffs Kessler and BK Industries, Inc., the motion to dismiss all remaining claims is granted with limited leave to amend, as detailed above, for failure to state a claim.

5. If the plaintiffs elect to file a second amended complaint, they must do so **WITHIN THIRTY DAYS**.

6. If the plaintiffs file a second amended complaint, the Court cautions them and their counsel that it intends to strictly enforce the requirements of Federal Rule of Civil Procedure 8(a)(2), i.e., that the complaint include a "short and plain" statement of each claim. Any failure to comply with this rule may result in sanctions, including dismissal with prejudice, given this Court's very limited resources. "Confusing complaints unnecessarily burden the courts who must spend time deciphering them and then managing the needless pretrial motion practice and uncertainty those pleadings create. Careful analysis of confusing complaints takes time 'away from more deserving litigants waiting in line.'" *Rosales v. U.S. Dep't of Interior*, No. 20-00521, 2022 WL 2052639 (E.D. Cal. June 7, 2022) (quoting and citing *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996)), *aff'd*, No. 22-16196, 2023 WL 5524755 (9th Cir. Aug. 28, 2023). The Court also emphasizes that under the Federal Rules, "the factual contentions" in any second

amended complaint must "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

IT IS SO ORDERED.

Dated: _September 16, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE